**Charles Dean LESLEY, Appellant,**

v.

**STATE OF OKLAHOMA and Ray H. Page, Warden, Oklahoma State Penitentiary, Appellees.**

**No. 10158.**

United States Court of Appeals
Tenth Circuit.

Feb. 27, 1969.

John M. Draper, Oklahoma City, Okl. (Fuller, Davis, Henderson & Tubb, Oklahoma City, Okl., on the brief), for appellant.

Charles L. Owens, Asst. Atty. Gen. (G. T. Blankenship, Atty. Gen. of Oklahoma, on the brief), for appellees.

Before MARVIN JONES *, Judge, Court of Claims, and BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an appeal from the denial of habeas corpus relief. In 1950, an Oklahoma state court sentenced the appellant to a term of 40 years on his plea of guilty of robbery with a firearm. The question is the voluntariness of that plea. State remedies have been exhausted. See Lesley v. Page, Okl.Cr.App., 430 P.2d 336. The federal district court held an evidentiary hearing, found that the appellant was advised of his rights to counsel, and concluded that there was no constitutional infirmity in the state proceedings.

At the time of the offense and sentence, appellant was 19 years of age and had worked as a broom corn cutter. He had an eighth grade education. Nothing in the record indicates that he had any prior experience with the courts. He was arraigned and pleaded guilty seven days after his arrest. During that time he had been in jail and had seen no lawyer except the prosecuting attorney.

No transcript of the arraignment proceedings has been preserved. Appellant testified that he did not have a lawyer

* Sitting by designation.

and did not know that the court would appoint one for him. He said that the prosecuting attorney told him that on a plea of guilty, he, the prosecutor, would recommend a sentence of 40 years; that he was scared; and that he thought it best to accept a sure thing than risk a possible greater sentence. The penalty in Oklahoma for robbery with a firearm is death or imprisonment for not less than five years. See 21 Okl.St.Ann. § 801.

The clerk of the state court testified that the court docket showed that the appellant and a co-defendant were informed of their statutory right to have an attorney; that they waived those rights and pleaded guilty; and that on the recommendation of the county attorney each received a 40-year sentence.

The sentencing judge testified that he was "sure" that he advised appellant of his rights, including a right to counsel. He said:

"I remember going into some detail with them about the circumstances, and so on, because of their age and their obvious demeanor. I was afraid that somebody had just frightened the living daylights out of them and told them a lot of things that were not true. I went into this pretty thoroughly."

The judge further testified that the prosecutor recommended a 40-year term. When asked if he had told the appellant that he would receive a 40-year sentence on a guilty plea, the judge answered:

"I sure did in this case, you bet I did, because I couldn't even understand why they would agree with the county attorney to take 40 years."

The state argues that the finding of the district judge that the plea was voluntary is a fact finding which is supported by substantial evidence and which is binding on an appellate court. The difficulty is that the district court made a general finding and said nothing about the plea bargaining with an ignorant, youthful defendant who was not represented by counsel.

 We have recognized that negotiations between prosecutors and those accused of crimes are valuable in the disposition of criminal litigation "when conducted fairly, and when the rights of the accused are fully protected." See Corn v. Oklahoma, 10 Cir., 394 F.2d 478, 479, n. 1; and see Shelton v. United States, 5 Cir., 242 F.2d 101, and 246 F.2d 571, reversed 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579. In the case at bar the district court made no finding that the plea bargaining was done fairly and that the rights of the accused were fully protected. On the record before us such finding could not be made. The state judge said frankly that he could not "understand" why appellant would agree to a 40-year sentence. Yet he went ahead and imposed that sentence. The fact that the prosecutor kept his end of the bargain and recommended a sentence of 40 years does not change the situation. The facts are that, in the words of the state judge, the appellant was "frightened" and had made a bargain which the judge could not "understand." The guilty plea was tainted by an overreaching of the appellant and it cannot stand.

The judgment is reversed and the case is remanded to the United States District Court with directions that the case be held in abeyance for a period of 120 days from the date of the issuance of the mandate. If within that time the state takes corrective measures that protect the appellant's federal constitutional rights, the petition for habeas corpus shall be dismissed. If the state does not take such measures, the appellant shall be released at the end of 120 days.

MARVIN JONES, Senior Judge (concurring in the result).

This is an appeal from a decision of the United States District Court for the Eastern District of Oklahoma, denying a petition for a writ of habeas corpus. The appellant, Charles Dean Lesley, had pleaded guilty in the state District Court of Johnston County, Oklahoma, to a charge of robbery with firearms. On recommendation of the county attorney, he had been sentenced to 40 years in the penitentiary. He alleges that he has been

deprived of counsel, equal rights and due process of law, guaranteed especially under the Sixth and Fourteenth Amendments to the Constitution.

Appellant, Lesley, 19 years of age, was charged with armed robbery. He had no attorney and no funds with which to employ one. During 7 days in jail, prior to court action, he saw no lawyer except the county attorney with whom he discussed a plea of guilty. He agreed to plead guilty on September 21, 1950, with the understanding that the county attorney would recommend a 40-year prison sentence.

The state district judge before whom he appeared was surprised, and asked the appellant if he had agreed to a sentence of 40 years, and was answered in the affirmative. Whereupon the judge accepted the recommendation of the county attorney and sentenced the defendant to 40 years imprisonment on his plea of guilty.

Appellant has served over 14 years in the state penitentiary, was paroled and returned to prison, where he is at the present time. He petitioned for habeas corpus in the state court in January, 1967, and followed through an appeal. His application was denied.

Petitioner then applied to the United States District Court for a writ of habeas corpus, alleging in his petition that when he appeared before the sentencing court on September 21, 1950, he was charged with his first offense, that he had little education, that he had never been in court before, and that he had no lawyer. He further alleged that he was frightened and confused, that he had not voluntarily, intelligently nor with understanding, waived his right to counsel, that he was denied his right to counsel and was denied due process of law, and had been deprived of his constitutional rights under the Sixth and Fourteenth Amendments to the Constitution.

In preparing his petition for habeas corpus in the state courts, he had written the court officials of the Johnston County District Court for copies of the judgment and sentence and other file papers of the proceedings in that court for use in applying for a writ of habeas corpus—all to no avail, as the officials did not answer his letter.[1]

The United States District Judge, on inquiry, found that no transcript of the Johnston County proceedings in the Lesley trial had been made in 1950, and that only the minutes of the arraignment could be found in the state court records.[2] Accordingly, the United States District Judge decided that an evidentiary hearing was necessary in order to find whether the conviction and sentence were in accord with due process.

With attorneys for both sides present, the United States District Court conducted a proceeding, heard three witnesses, including the petitioner, Lesley, Mrs. Stamps, the clerk of the Johnston County District Court, and Judge Monroe, who had sentenced the petitioner in 1950. The hearings were regular in form. If there had been a sentence of 5 or 6 years, or less, usually given for the first offense, in which no shots were fired, I would be inclined to accept the regularity and affirm the case, but when a sentence of 40 years in prison is given to an unsophisticated, almost ignorant youth, with meager proceedings in the state courts as to the record, this calls for further inquiry behind the wording of regularity in order to find whether the circumstances and facts justified such a harsh and unusual sentence.

Behind the facade of words, the following undisputed facts appear in the record. Here was a youth of 19 years, largely unlettered, who had been a broomcorn cutter, who had never been in court, it being his first offense, a boy

---

1. Lesley's letter is in evidence as Exhibit A.

2. And yet, the Court of Criminal Appeals in a short opinion denied the writ, stating that the petitioner had not furnished copies of information and indictment, judgment and affidavits of officials or other persons familiar with and having personal knowledge of the facts.

who had been reared in poverty, who faced a charge of robbery with firearms.

Let us examine the testimony at the hearing before the United States Court —the first evidence that had ever been offered in all the 18 years, including the proceedings at the sentencing in 1950.

Charles Lesley testified to practically all the allegations that are recited above, his age, his lack of schooling, his youthful poverty, the fact that he did not have a lawyer, and had no funds, that he did not know that he had a right to have a lawyer appointed by the court; that he first learned of his rights in this regard several years later after he was out on parole and talked to a lawyer about trying to get a pardon. He then told the lawyer about the facts in his case, that no shot was fired, and no one was injured, and that he had no attorney; and was told by the lawyer that his constitutional rights had been violated when he was sentenced. Lesley said he had no recollection of being told by anyone at the time of the trial that he could have a court-appointed attorney.

Lesley further testified that he was frightened and confused at the time he appeared in the Johnston County District Court, and did not know what he was doing, that the sheriff told him he might get 99 years if he did not plead guilty, and that it would be easier on him if he pleaded guilty.

Ruth Stamps testified that she became clerk of the District Court of Johnston County, Oklahoma, in 1953. She, however, testified that she now had custody and control of the appearance dockets for the 2-year period, September 1, 1949 through September 6, 1951; that the minutes showed 35 cases were filed during that 2-year period. She stated the minutes showed that the accused in 17 of the cases, including Lesley's, waived the right to an attorney; that the minutes were substantially the same in all 17 cases as in the Lesley case, and that in only one of them was an attorney appointed, and that was in a murder case.

As deputy clerk under her predecessor she had learned how to write the minutes, that is, what language to use. The district judge would usually tell her what minutes to use.

The judge who had sentenced the accused in 1950 testified at the hearing in 1968 that the accused was frightened, and the judge admitted he was surprised when he was told that the accused had agreed to accept a 40-year sentence, which the county attorney had recommended.

In his direct testimony, Judge Monroe testified:

I had a statement that I made to everybody that entered a plea * * * after the information was read.

Q: What was that basically, that statement, Judge?

A: I would advise them that they had a right to counsel before they entered a plea in the case, they had a right to wait 24 hours, and if they wanted a lawyer I would appoint one for them, and that they understood specifically that if they were tried by a jury that they might get more and they might get less than they would receive on a plea.

Q: You think, then, you did advise Mr. Lesley basically what you stated here?

A: I think I did. [R. 68.]

While he made a more positive statement later, it is difficult to get away from the impression that he was depending largely on his custom in such cases rather than on his recollection as to the particular case. If the judge's entire testimony is read, this impression becomes stronger.

The judge further testified that a 40-year sentence was fairly unusual, that during that period the average sentence was about 4 years. He said he was positive that he had told the accused of his right to counsel because he remembered he could not understand why the accused would agree to a sentence of 40

years, and that one reason he remembered was that he (the judge) felt that someone "had just frightened the living daylights out" of the accused.

Yet the record shows that the judge accepted the recommendation of the county attorney and pronounced sentence accordingly.

While there is a conflict in the testimony as to whether the accused was informed of his right to court-appointed counsel, the United States District Judge, after considerable questioning, found that he had been so informed by the trial judge, which is binding as a finding of fact. However, the record testimony and circumstances are very convincing and justify the conclusion that Lesley, in his fright and confusion, did not know what it was all about and did not intelligently, understandingly and voluntarily waive his right to court-appointed counsel and did not know or appreciate what he was waiving or giving up.

Does anyone believe that any jury anywhere in this country would have found a verdict authorizing a sentence of 40 years in prison against a 19-year-old when no shot was fired and no one was injured? It is common knowledge among lawyers and men of experience that the average sentence in cases of this kind is rarely more than 5 years. There is no evidence in the record that anyone told him of that fact. The county attorney is not living and his testimony is not available. The sheriff did not testify.

If Lesley had agreed to a sentence of 5 or 6 years, there would be no problem, but when an inexperienced, frightened youth, without a criminal record, without counsel on a plea of guilty, without any evidence being taken is assessed a sentence of 40 years in the penitentiary in the revealing circumstances disclosed here, it is enough to stagger credulity.

In the great novel, *Les Miserables*, Jean Valjean who had stolen a loaf of bread to feed his sister's children, was arrested and sentenced to prison. Victor Hugo, the author, makes the following comment:

There are in our civilization terrible hours. They are those mournful moments when society consummates its withdrawal from and pronounces shipwreck upon a human soul. Jean Valjean was given five years in the galleys.

That was fiction. Here we are dealing with facts, but the human equation runs through it all. In law, as in life, all facts and circumstances must be examined before just conclusions are reached. When the light of reason and the logic of analysis are brought to bear on the facts of record, they preclude any other reasonable conclusion that Lesley did not fully comprehend the need of an attorney and did not intelligently waive his right to court-appointed counsel.

In the latter part of the transcript the United States District Judge indicated that if the sentence was excessive the appeal should be in the state court and could not be in the federal court.

I quote from Judge Langley's statement made just before entering the order which denied the writ:

But the proper forum for determining the matter of whether the sentence was excessive, seems to me, would be in the Court of Appeals for Oklahoma, Court of Criminal Appeals, not here. [R. 79, 80.]

As a matter of actual fact it is the manifestly excessive sentence that triggered this whole proceeding. Otherwise the case would not be here. The question of lack of counsel only arose in connection with the excessive sentence. The lack of counsel and the excessive sentence are inextricably interwoven.

The learned District Judge's remark changes what would have been finding of fact into a question of law or at least with a mixed question of fact and law. The very fact of the extraordinarily excessive sentence demonstrates completely that Lesley did not competently waive his right to counsel in any event.

In answer, I quote from Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966):

> The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law. There is a presumption against the waiver of constitutional rights, see, e. g., Glasser v. United States, 315 U.S. 60, 70–71 [62 S.Ct. 457, 464–465, 86 L.Ed. 680], and for a waiver to be effective it must be clearly established that there was "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461].

As was stated by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 462–463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938):

> It [the Sixth Amendment] embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained laymen may appear intricate, complex and mysterious.

This case and many others recognize that, while the right to counsel may be waived, where life or liberty are involved, the waiver must be intelligently, competently and understandingly made, and in passing on this question, the facts and circumstances, the training, and experience of the accused should be considered.[3]

It is true the accused's case was tried before the case of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and similar cases were decided, but the same constitutional rights existed then, and while retroactive correction should be made only in cases where great wrongs have been done, I think this is such a case.

The defendant in this case has served over 14 years[4] in paying his debt to society for the one mistake that he is shown to have made while still in his teens. He committed a crime for which punishment is decreed in the law. Society is entitled to that protection, but this man, now 37 years of age,[5] has given the best years of his life in payment of his debt to society. Must he give 26 more years of an already broken life in expiation of a crime committed in earlier years when he has already served far longer than the customary penalties assessed in similar cases? To demand the 40 years would border on cruel and unusual punishment, and cer-

---

3. In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Supreme Court reviewed the history and wording of the Fourth, Fifth, Sixth and other Amendments, including the effect of the Fourteenth Amendment on the earlier amendments, and held that the right to counsel is fundamental to liberty, and that the Fourteenth Amendment makes all the rights amendments binding upon the states.

On right to counsel and waiver, see Westbrook v. Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966).

On retroactivity, see Gideon v. Wainwright, supra; Doughty v. Maxwell, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964); Arthur v. Colorado, 380 U.S. 250, 85 S.Ct. 943, 13 L.Ed.2d 818 (1965); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

It seems that retroactive effect will be applied when the facts clearly justify such application.

Whether the Fourteenth Amendment was originally intended to be given such broad application is not an issue here. The pattern has been set, and the language has been officially interpreted. Since it is to be applied any time, it should be involved in the instant case.

4. The defendant was paroled twice. The first time was December 1960 to February 1962. The second time was October 1964 to July 1966.

5. At the hearing, April 12, 1968.

tainly would deprive the appellant of due process and equal protection of the law.

I want to emphasize that I believe in the enforcement of the law, without which there could be no human rights. Law and liberty are as intimately linked as the law of supply and demand. One cannot live without the other. But in this case, I am persuaded that the penalty for the crime has been fully paid and the purpose of the law has been fully accomplished.

I concur in the result and in the order.