William A. GAINES,
Petitioner-Appellant,

v.

Norman B. HESS and the Attorney General of the State of Oklahoma, Respondents-Appellees.

No. 79–1284.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 30, 1981.

Decided Nov. 2, 1981.

Leonard D. Munker, Federal Public Defender, Wichita, Kan., for petitioner-appellant.

C. Elaine Alexander, Asst. Atty. Gen. (Jan Eric Cartwright, Atty. Gen., and Janet L. Cox, Asst. Atty. Gen., on the brief), Oklahoma City, Okl., for respondents-appellees.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Petitioner William A. Gaines appeals from an order of the United States District Court for the Western District of Oklahoma denying his pro se application for habeas corpus relief.[1] We vacate the order and remand to the district court for an *in camera* evidentiary hearing to determine whether the state trial court denied Gaines his due process right to a fair trial by failing to order disclosure of the identity of the police informant involved in this case.

I.

*Prior Proceedings*

On April 22, 1976, Gaines was arraigned in the District Court of Oklahoma County for the crime of unlawful distribution of a controlled dangerous substance, after former conviction of a felony, under 63 Okla. Stat. § 2–401[2] and 21 Okla.Stat. § 51.[3] Gaines was represented at the arraignment by an attorney from the Oklahoma Public. Defender's Office.

The same attorney represented Gaines during his trial before a jury in the District Court of Oklahoma County. In that proceeding, the State called two witnesses. The first, Robert Bemo, an undercover police officer with the Oklahoma City Police Department, testified to the following. On the evening of April 13th, he received a phone call from his informant. The informant told him that he knew someone from whom Bemo could purchase some drugs. Bemo then picked up the informant, and they drove to the parking lot of the Village South Apartments in Oklahoma City. At approximately 8:00 p. m., Gaines approached the two of them and offered to sell Bemo a tinfoil packet containing a mixture of THC and cocaine. Bemo purchased a packet from Gaines for $10.

The Information filed against Gaines had not revealed that an informant was present

---

1. Gaines is represented in this appeal by a Federal Public Defender.

2. Section 2–401 provides:

   "A. Except as authorized by this act, it shall be unlawful for any person:

   1. To manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance;

   2. To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance.

   "B. Any person who violates this section with respect to:

   1. A substance classified in Schedule I or II which is a narcotic drug or lysergic acid diethylamide (LSD) is guilty of a felony and shall be sentenced to a term of imprisonment for not less than five (5) years nor more than

   twenty (20) years and a fine of not more than Twenty Thousand Dollars ($20,000.00) . . . ."
   63 Okla.Stat. § 2–401.

3. Section 51 provides:

   "Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction is punishable therefor as follows:

   1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five (5) years, such person is punishable by imprisonment in the penitentiary for a term not less than ten (10) years."
   21 Okla.Stat. § 51.

at the sale. On cross-examination of Bemo, counsel for Gaines requested the name and address of the informant. An objection was made, and the court refused to compel disclosure. The second witness, Rodney Sherrer, a forensic chemist employed at the Oklahoma State Bureau of Investigation, testified that the substance in the packet was phencyclidine, a hallucinogenic compound falling within Schedule Three of the Oklahoma Controlled Dangerous Substance Act.

After the State rested, Gaines' counsel requested a lunch break in order to telephone a witness. Following an hour and a half break, Gaines' counsel called Gaines to the stand. Counsel asked Gaines if he previously had been convicted of a felony, to which Gaines replied that he had been convicted of first degree manslaughter and of burglary. Gaines then testified that on the evening of the alleged crime, he had been babysitting at the Village South Apartment for Ms. Pam Madison, a college classmate. Gaines denied he had sold a controlled dangerous substance to officer Bemo.

When Gaines left the stand, his counsel requested ten minutes to see if he could locate Pam Madison, the witness he had been attempting to reach during the lunch break. Gaines' counsel explained that he was having difficulty finding her because she had recently moved. The record shows the trial judge was annoyed that Gaines' counsel had not subpoenaed the witness, but he ultimately allowed a twenty minute recess for the purpose of locating her. Unable to locate Madison during the recess, the defense rested.

The trial court instructed the jury that punishment for unlawful distribution of a controlled dangerous substance after former conviction of a felony, "is for any term not less than ten (10) years . . . ." Rec., vol. II, Court's Instruction No. 7. The jury returned a verdict of guilty and assessed Gaines' punishment at fifty years.

Gaines exhausted his state remedies. He then filed in the United States District Court for the Western District of Oklahoma for a writ of habeas corpus, attacking the judgment and sentence of the state trial court. The district court dismissed the petition. Appealing the dismissal, Gaines contends that the lower court ignored the following constitutional violations committed during his state court trial: (1) denial of his Fourteenth Amendment due process right to a fair and impartial trial; (2) imposition of an excessive sentence in violation of the Eighth Amendment; and (3) denial of his Sixth Amendment right to effective assistance of counsel.

## II.

### Disclosure of Informant's Identity

Relying upon *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), Gaines asserts the trial court denied him due process in failing to require the prosecution to divulge the name of the informant who set up the drug transaction and who was present during the sale. In *Roviaro,* the Supreme Court made clear that the "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law" is not an absolute one. *Id.* at 59, 77 S.Ct. at 627. "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60–61, 77 S.Ct. at 627–628. The Court said the matter involves balancing the public interest in protecting the flow of information respecting criminal activities against "the individual's right to prepare his defense." *Id.* at 62, 77 S.Ct. at 628. Where the balance falls "depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.*

*Roviaro* involved a direct appeal from a conviction in a federal district court

for violations of the United States Code. Since the Court could ground its decision on federal evidentiary rules, it did not need to determine whether nondisclosure also violated the defendant's constitutional rights. Here, we are faced with a habeas corpus petition challenging state trial proceedings, and we are limited in our review of error to those of constitutional magnitude. *See Brinlee v. Crisp*, 608 F.2d 839, 843 (10th Cir. 1979), *cert. denied*, 444 U.S. 1047, 100 S.Ct. 737, 62 L.Ed.2d 733 (1980). However, we agree with the other federal courts that have actually ruled in the context of habeas corpus proceedings, that disclosure of an informant's identity in situations analogous to *Roviaro* is mandated by the Constitution. *See McLawhorn v. North Carolina*, 484 F.2d 1, 5 (4th Cir. 1973); *Pena v. Leferve*, 419 F.Supp. 112, 116–17 (E.D.N.Y.1976); *Hawkins v. Robinson*, 367 F.Supp. 1025, 1029–34 (D.Conn.1973). *Cf. United States v. Emory*, 468 F.2d 1017, 1020–21 (8th Cir. 1972) (due process concerns underlie *Rovario*; direct appeal); *Burwell v. Teets*, 245 F.2d 154 (9th Cir. 1957) (due process concerns underlie *Rovario*; withholding of records by prosecutor). *See also United States v. Myers*, 327 F.2d 174, 180 (3d Cir.), *cert. denied*, 379 U.S. 847, 85 S.Ct. 88, 13 L.Ed.2d 52 (1964); *Hernandez v. Nelson*, 298 F.Supp. 682, 685–86 (N.D.Cal.1968).

▮ The Court in *Roviaro* declared that "fundamental requirements of fairness" require restrictions on the Government's privilege to refuse disclosure of an informant's identity. *Rovario*, 353 U.S. at 60, 77 S.Ct. at 627. This strongly indicates that the Court was referring to a constitutional limitation on the privilege, for few phrases are more closely associated to a constitutional guarantee than is the term fundamental fairness. The very "touchstone of due process is fundamental fairness." *Gibbany v. Oklahoma*, 415 F.Supp. 1117, 1121 (W.D.Okl. 1976). *Accord, Pena v. Leferve*, 419 F.Supp. at 116. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Lisenba v. California*,

314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941); *Miller v. North Carolina*, 583 F.2d 701, 706 (4th Cir. 1978); *Aldens, Inc. v. LaFollette*, 552 F.2d 745, 750 (7th Cir.), *cert. denied*, 434 U.S. 880, 98 S.Ct. 236, 54 L.Ed.2d 161 (1977).

▮ We do not see how the Court's usage of the term could be otherwise construed. The public's interest in effective law enforcement is an important one. But at some point, withholding the identity of an informant who may be critical to the conduct of the defense infringes the defendant's constitutional right to a fair trial, which obviously includes the right to adequately prepare and present that defense. *Roviaro* clearly establishes that a blanket disclosure rule is not required. Only under circumstances in which nondisclosure would deprive the defendant of his due process right to a fundamentally fair trial is disclosure constitutionally mandated. *Cf. McCray v. Illinois*, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967) ("What Roviaro makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even in formulating evidentiary rules for federal criminal trials.")

▮ This case may present such circumstances. The transaction here was not simply one in a series of drug sales involving Gaines. Gaines' defense was that he was not the person who sold drugs to officer Bemo. The informant in question set up the transaction and was the only witness to the sale other than Bemo and the seller. Thus, the informant could testify directly to the critical issue in the case: whether Gaines was the seller. The informant's existence was revealed by Bemo's testimony, and the informant was the only one mentioned in the record, other than Gaines himself, who could corroborate or discredit Bemo's testimony. On these facts, it would violate Gaines' due process rights to deny disclosure if in fact the informant could provide potentially significant exculpatory testimony.

■■ Under these circumstances, an *in camera* hearing is the appropriate procedural vehicle for determining whether the informant's testimony would lend significant credence to Gaines' defense. Such a procedure will limit the extent of the disclosure of the informant's identity and information, thereby protecting the State's interest in avoiding unnecessary disclosure, while at the same time it will safeguard defendant's right to the testimony of any accessible witness who may be significantly helpful to his defense. This court recognized the value of this procedure in *United States v. Martinez*, 487 F.2d 973, 977 (10th Cir. 1973). Numerous other circuits have approved the *in camera* hearing as a device to ensure proper application of the *Roviaro* test. *See, e. g., United States v. Cortese*, 614 F.2d 914, 921–22 (3d Cir. 1980); *United States v. Weir*, 575 F.2d 668, 672–73 (8th Cir. 1978); *United States v. Freund*, 525 F.2d 873, 877 & n.5 (5th Cir.) (citing additional cases), *cert. denied*, 426 U.S. 923, 96 S.Ct. 2631, 49 L.Ed.2d 377 (1976). The *in camera* procedure has the advantage of giving the trial court considerable flexibility in determining if disclosure is warranted. For instance, where identity is at issue, the informant might be shown a picture of the defendant. *See, e. g., United States v. Doe*, 525 F.2d 878 (5th Cir.), *cert. denied*, 425 U.S. 976, 96 S.Ct. 2179, 48 L.Ed.2d 801 (1976). We leave to the discretion of the trial court how best to determine the relevance of the informant's testimony, although the *in camera* proceedings should be transcribed and sealed to permit meaningful review while retaining limited disclosure. *See McLawhorn*, 484 F.2d at 5 n.13.

It may be that the State cannot now produce the informant, or that he would not be an exculpatory witness. The district court, after the *in camera* hearing, will have the opportunity to make findings and, if proper, issue a remedial order to protect the petitioner's due process rights with the benefit of the additional testimony.[4] If the informant would make an exculpatory witness, the district court should enter a conditional order that the State be afforded a reasonable time to retry the petitioner, with the witness available, or otherwise that the writ shall issue. *See McLawhorn*, 484 F.2d at 8; *see also Lesley v. Oklahoma*, 407 F.2d 543, 544 (10th Cir. 1967).[5]

### III.

### *Remaining Constitutional Claims*

Because the *in camera* hearing may reveal that nondisclosure of the informant did not violate Gaines' constitutional rights, we will address Gaines' other contentions.

Gaines claims that the Oklahoma legislature has failed to establish a trial procedure for dealing with prosecutions under its enhanced sentencing statute, 21 Okla.Stat. § 51, that comports with due process requirements. Section 51 provides that a person who has been previously convicted of an offense punishable by imprisonment in the penitentiary must be punished for a subsequent offense with an enhanced sentence. For example, Gaines was prosecuted for a Schedule II offense of unlawful distribution of a controlled dangerous substance. Under 63 Okla.Stat. § 2–401, the prison sentence for such an offense is to be not less than five years, nor more than twenty. However, because Gaines had been previously convicted of first degree manslaughter, 21 Okla.Stat. § 51 requires his sentence to be "not less than ten years." Gaines' contention is that prosecution under the

---

4. If the district court concludes that disclosure of the informant's identity is not required by due process requirements, the findings may be in terms which will protect the identity of the informant, as will the sealing of the record of the *in camera* proceedings.

5. If the State is ordered to afford a new trial with the informant available as a defense witness because of due process requirements, such a conditional order will permit the State to determine whether disclosure of the informant's identity should be made or whether, in the public interest, it is preferable not to do so and to dismiss the prosecution.

enhanced punishment statute is inherently unfair because the jury is able to assess guilt and punishment simultaneously. To sentence under that provision, the jury must learn of the prior conviction. This, he claims, prejudicially influences its assessment of guilt.

■ Gaines' claim that Oklahoma's trial procedures for enhanced punishment prosecutions violate due process is without substance. His argument ignores the Oklahoma provision for a bifurcated trial in such situations.[6] Assessing guilt and fixing punishment may be done in two separate stages, with the jury learning of prior convictions only at the sentencing stage. Gaines did not have a bifurcated trial because he waived his right to a two-stage proceeding by taking the stand and admitting his convictions. *See Reed v. State*, 580 P.2d 159, 163 (Okl.Cr.App.1978); *Wilmeth v. State*, 520 P.2d 699, 700 (Okl.Cr.App.1974).

■ Gaines also alleges he was deprived of a fair trial by certain comments the trial judge made during the course of the trial. We agree with the lower court and the Oklahoma Court of Criminal Appeals that the challenged trial court comments were not so prejudicial as to deprive him of a fair trial. We find his remaining due process claims to be similarly lacking in merit.

■ Gaines' Eighth Amendment argument is that the fifty year sentence given to him under Oklahoma's enhanced sentencing statute is excessive for the crime committed, and therefore constitutes cruel and unusual punishment. We are constrained by *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), to hold that Gaines' sentence was not so excessive as to violate the Eighth Amendment. In *Rummel*, the Court indicated that "for crimes concededly classified and classifiable as felonies," the *length* of sentence is almost entirely a matter of legislative prerogative.[7] *Id.* at 274, 100 S.Ct. at 1139. *Rummel* involved a habeas corpus petitioner who had been given a life sentence under a Texas recidivist statute that made life imprisonment the mandatory sentence for a third felony conviction. The petitioner had been previously convicted of fraudulent use of a credit card to obtain $80 worth of goods or services and of passing a forged check in the amount of $23.86. His third conviction was for obtaining $120.75 by false pretenses. The Court held that the life sentence does not constitute cruel and unusual punishment. Gaines' prior convictions are of more serious nature than in *Rummel* and his sentence was shorter than life. *Rummel* therefore defeats Gaines' Eighth Amendment argument.

■ Under the Sixth Amendment, Gaines asserts he is entitled to a new trial because he was not provided effective assistance of counsel. This contention essen-

---

**6.** 22 Okla.Stat. § 860 provides:

"In all cases in which the defendant is prosecuted for a second or subsequent offense, except in those cases in which former conviction is an element of the offense, the procedure shall be as follows:

"(a) The trial shall proceed initially as though the offense charged was the first offense; when the indictment or information is read all reference to prior offenses shall be omitted; during the trial of the case no reference shall be made nor evidence received of prior offenses except as permitted by the rules of evidence; the judge shall instruct the jury only on the offense charged; the jury shall be further instructed to determine only the guilt or innocence on the offense charged, and that punishment at this time shall not be determined by the jury.

"(b) If the verdict be guilty of the offense charged, that portion of the indictment or information relating to prior offenses shall be read to the jury and evidence of prior offenses shall be received. The court shall then instruct the jury on the law relating to second and subsequent offenses, and the jury shall then retire to determine (1) the fact of former conviction, and (2) the punishment, as in other cases."

**7.** The Court did not rule out the possibility that a prison term might be so disproportionate to the crime charged that it would be unconstitutional. *See* 445 U.S. at 274 n.11, 100 S.Ct. at 1139 n.11.

tially raises two points. First, the trial court unconstitutionally shackled his counsel's ability to effectively represent him by refusing to require disclosure of the informant's identity and by making uncalled for comments in the presence of the jury. Second, his counsel failed to adequately prepare for trial. In particular, he relies upon his attorney's failure to interview and subpoena the alibi witness, Pam Madison.

Regarding the claim of court-imposed ineffective assistance of counsel, we have already dealt with the issue of informant disclosure. As for the trial court's comments, although of doubtful propriety, they did not affect counsel's ability to effectively represent Gaines.

Gaines' second objection relates to counsel-generated ineffectiveness. Gaines asserts that his counsel should have interviewed Pam Madison and called her as a witness. We cannot say, however, that failure to do so denied Gaines his Sixth Amendment right to effective assistance of counsel. By Gaines' own testimony, Ms. Madison left her five and eight year old children with Gaines on the evening in question while she was at work in a restaurant, and she did not return until "about eight o'clock or nine; somewhere along in there." Rec., vol. II, Trial Trans. at 30. At most, she could only testify to the collateral fact that she left her children with Gaines at the same apartment complex where the drug sale took place. Since she was not present, she could not establish that Gaines did not leave the apartment long enough to complete the drug transaction in the parking lot. Under these circumstances, counsel's failure to obtain her testimony did not constitute ineffective representation under the standards we have set forth in *Dyer v. Crisp*, 613 F.2d 275 (10th Cir.), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). *See United States v. Parr-Pla*, 549 F.2d 660, 664 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2935, 53 L.Ed.2d 1069 (1977).

The case is remanded to the district court for further proceedings consistent with this opinion.

SETH, Chief Judge, concurring:

I generally concur with the majority opinion. My only departure arises from the remand and from what to me is the presence of an unresolved matter. This is whether a constitutional issue was raised in the state trial court and decided by the state court. We have only a question on the cross-examination of a witness as to the name of the informer. The state court on direct appeal did not discuss the compulsory process issue, and it was not developed in initial trial motions. It was raised in the state post-trial proceedings (P.C. 78–197) about a year after trial, but was not really considered as a constitutional issue but instead as a matter of trial court discretion.

Thus in my view the question whether the issue was raised properly in the state courts has not been resolved. Further I am unable to find a direct statement by the petitioner that the identity of the informer was unknown to him at the time of trial. It is obvious that the petitioner relied on his alibi defense, but now he asserts his constitutional rights were violated because the witness was not allowed to answer the identity question. If the defendant knew the identity of the informer, there does not seem to be a constitutional issue present. If he asserts now that he did not then know the informer's identity, there is a fact issue unresolved.

*In camera* proceedings as to an informant's participation are useful during the course of ongoing criminal cases, but it is difficult to see how they can be effective in a civil case in another court system with a five-year lapse of time.

It would seem preferable to remand this case to the district court with directions to give the state court an opportunity to consider the several issues of fact and law which were not resolved. It was after all their trial and should be back before the Oklahoma courts.