**Anthony GRANDISON**

v.

**Special Agent William MILLER et al.**

**Civ. No. HM–80–3043.**

United States District Court,
D. Maryland.

June 16, 1988.

Anthony Grandison, Lewisburg, Pa., pro se.

Russell T. Baker, Jr., Stuart O. Simms, Asst. U.S. Attys., Baltimore, Md., for defendants.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

*Pro se* plaintiff Anthony Grandison ("Grandison") sues federal law enforcement officers Special Agent William Miller ("Miller"), Special Agent Francis McCormack ("McCormack"), Special Agent John Tripodi ("Tripodi"), and Special Agent Supervisor Michael Agnese ("Agnese") for arresting him without probable cause in violation of the Fourth Amendment. 28 U.S.C. § 1331. He alleges that the officers fabricated the existence of a confidential informant and the informant's information upon which they based, in part, their affidavits supporting the arrest warrant. Plaintiff requests damages in the amount of $715,-000. This amount includes damages for false arrest, for the injuries inflicted on him during the arrest, the failure of the Baltimore City Jail to feed him or provide

him medical attention, for reimbursement of the bail bond, and for the attorney's fees he expended to defend against the charge.

Pending before the Court is defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, Paper No. 17. The Court referred this motion to United States Magistrate Daniel E. Klein for a Report and Recommendation, pursuant to Fed.R.Civ.P. 72. On August 31, 1987, Magistrate Klein issued a Memorandum and Order, Paper No. 38, in which he stated that there was a material issue of fact regarding the informant. He ordered additional briefing on the issue. Defendants submitted Defendants' Supplemental Motion for Summary Judgment, Paper No. 39, on September 18, 1987. In this motion, defendants state that in the intervening eight years the files had been destroyed. Defendants argued that the Court should hear *in camera* testimony from one of the police officers involved in order to resolve the material issue of fact.[1] On October 19, 1987, Grandison filed Plaintiff's Response to the Magistrate's Memorandum and Order and the Defendants' Motion for Summary Judgment, Paper No. 40. In this response, Grandison argued that the taking of *in camera* testimony was an improper procedure, and that the Court should instead hear testimony from the informant in Grandison' presence. On November 30, 1987, Magistrate Klein ordered the *in camera* testimony of one of the police officers. On January 15, 1988, Magistrate Klein conducted the hearing. Sergeant Gary Childs ("Childs") of the Baltimore City Police Department, who had worked with the confidential informant, testified. On February 2, 1988, Magistrate Klein issued his Report and Recommendation, concluding that the informant was not only authentic but also was reliable. Magistrate Klein recommended that the Court grant defendants' Motion for Summary Judgment.

Because the time for filing objections to this Report and Recommendation passed without the Court having received any objections, the Court will affirm and adopt the Report and Recommendation and will enter judgment for defendants. The Court notes further that, if it were not to enter judgment for defendants on that basis, it would enter judgment for them on the merits. The Court will incorporate its ruling in a separate order.

TIMELINESS

■ Federal Rule of Civil Procedure 72(b), the Rule under which the Court referred this motion to Magistrate Klein, states in relevant part:

．　　．　　．　　．　　．

Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule.

．　　．　　．　　．　　．

Plaintiff was advised that he had until February 24, 1988 to file any objections to the Report and Recommendation. Grandison requested, and the Court granted, an extension until March 25, 1988. Even with this extension of time, the Court did not receive plaintiff's objections until April 4, 1988. Because the Court received no objections to Magistrate Klein's Report and Recommendation within the prescribed time period, the Court is under no obligation to conduct de novo review of any part of it.[2]

---

1. Defendants note in this brief that plaintiff has been convicted in both federal and state courts for his arrangement of the contractual killing of a witness against him in a subsequent trial on a narcotics offense. Plaintiff has received the death penalty for the state offense. While this information, as plaintiff points out, is not relevant to the ultimate determination of this claim, it is relevant to the Magistrate's determination to conduct an *in camera* hearing.

2. Further, by not filing his objections in a timely fashion, plaintiff has waived his right to raise these objections on appeal. *Wright v. Collins,* 766 F.2d 841, 845 (4th Cir.1985); *Carr v. Hutto,* 737 F.2d 433, 434 (4th Cir.1984), *cert. denied,*

Accordingly, the Court will in a separate order adopt and affirm the Magistrate's Report and Recommendation and will enter summary judgment for defendants in the instant case.

## THE MERITS

Although the Court need not consider plaintiff's objections, the Court notes that it has in fact conducted a de novo review of the file, including listening to the tape of the January 15, 1988 *in camera* hearing conducted by Magistrate Klein. Nothing in plaintiff's objections persuades the Court that the Report and Recommendation should not be adopted. Were it not to grant defendants' summary judgment motion because no timely objections were filed to the Report and Recommendation, the Court would enter judgment for defendants on the merits.

### Factual Background

During the week of March 10, 1979, Detective John Smoot ("Smoot") (not a defendant) of the United States Drug Enforcement Agency ("DEA") received a tip from a confidential informant that Walter Webster, housed in Baltimore City Jail awaiting trial on his narcotics charges, had issued contracts to kill the witnesses against him. One of those targeted was Joseph Miller ("Joseph"). Miller and Smoot contacted Joseph. Joseph advised them that he had spoken with Webster, who indicated his awareness that Joseph was to testify against him. Webster's awareness of Joseph's witness status was confirmed by two tape-recorded telephone conversations, one between Webster and Joseph, the other between Webster and someone else.

On March 28, 1979, Joseph was in fact shot. He told Miller and Smoot the following story. Joseph and Grandison arranged to meet. When Joseph arrived, Grandison was sitting in the passenger seat of his car.

He told Joseph to wait because someone had a message for him. Vernon Evans ("Evans") then appeared. Joseph identified himself. Evans then extended the bag he had in his left hand and said "I was told to give you this." Joseph reached for the bag. Evans drew a pistol and attempted to shoot Joseph in the face. Joseph deflected the pistol and struggled with Evans. Evans fired three more shots, one of which struck Joseph in the arm. Evans was arrested later that evening.

On March 29, 1979, United States Magistrate Clarence E. Goetz issued an arrest warrant for Grandison. Miller swore an affidavit in support of the warrant on charges of violating 18 U.S.C. § 1503 (obstruction of justice), 18 U.S.C. § 1510 (willfully injuring a witness), and 18 U.S.C. § 371 (conspiracy to commit an offense against the United States). The affidavit was based on the shooting of Joseph, the information from the confidential informant, the confirmation that Webster knew that Joseph would testify against him, and Grandison's and Evans' reputation in DEA and Baltimore City Police as contract killers. After chasing Grandison by car and on foot, and after subduing him forcibly, Agents Tripodi, Miller and McCormack arrested plaintiff pursuant to this warrant on April 12, 1979. At the trial scheduled on May 17, 1979, the charges were dismissed at the request of the government to allow state prosecution of the plaintiff and Evans.[3]

### Discussion

Grandison's sole claim of a constitutional violation is the conclusory allegation, without a shred of factual support, that the agents manufactured the informant and the informant's evidence for the sole purpose of obtaining an arrest warrant to harass him.[4] He supports this argument by

---

474 U.S. 1019, 106 S.Ct. 567, 88 L.Ed.2d 552 (1985).

**3.** Grandison and Evans were acquitted after trial in the state system. Grandison was later indicted, tried and convicted on charges arising from the arrest. The charges were forcibly assaulting, resisting and intimidating federal officers; carrying a firearm in the commission of a

felony; and possession of a firearm by a convicted felon. He received a five year prison term on July 24, 1979, and this conviction was affirmed by the Court of Appeals for the Fourth Circuit on March 25, 1981.

**4.** Magistrate Klein initially interpreted Grandison's requests for damages as separate causes of action, and recommended that summary judg-

reasoning, for example, that no informant could have participated in the number of arrests and convictions in which the agents alleged that the informant assisted without the identity of the informant being discovered, and that one of the agents wasn't even in the United States at the time of the arrest, so is assuredly lying when he states in an affidavit that he knew of the informant. Grandison's late-filed objections center on Magistrate Klein's determination to conduct an *in camera* hearing.

Grandison does not contest the fact that the agents had probable cause to arrest him if the informant did exist. Nor could he. The agents received the tip, confirmed that Webster knew that Joseph was a witness, and shortly thereafter Grandison and Evans made an attempt to kill Joseph. The Magistrate's finding upon the totality of the circumstances that probable cause existed to arrest defendant was the only logical one he could have made. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The Court further finds that the facts support Magistrate Goetz' determination of probable cause for the arrest warrant even without the information from the informant.

### The Roviaro Standard

Grandison relies on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and its progeny to support his claim that the identity of the informant must be revealed to him. The *Roviaro* Court held that "[t]he problem [of whether a court should order the government to release the identity of an informant] is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his

defense." *Supra.*, 353 U.S. at 62, 77 S.Ct. at 628. The cases cited by plaintiff all deal with criminal defendants. *United States v. Ordonez*, 722 F.2d 530 (9th Cir.1983) *as amended* 737 F.2d 793 (9th Cir.1983); *Gaines v. Hess*, 662 F.2d 1364 (10th Cir. 1981); *United States v. Harper*, 609 F.2d 1198 (6th Cir.1979); *United States v. Long*, 533 F.2d 505 (9th Cir.1975), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 92 (1976); *United States v. Moore*, 522 F.2d 1068 (9th Cir.1975), *cert. denied*, 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *United States v. Anderson*, 509 F.2d 724, 730 (9th Cir.1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *United States v. Rawlinson*, 487 F.2d 5 (9th Cir.1973), *cert. denied*, 415 U.S. 984, 94 S.Ct. 1579, 39 L.Ed.2d 881 (1974); *United States v. Jackson*, 384 F.2d 825 (3rd Cir.1967), *cert. denied*, 392 U.S. 933, 88 S.Ct. 2294, 20 L.Ed.2d 1391 (1968). The Court is here confronted with, not a criminal defendant facing incarceration or other deprivation of liberty, but instead a plaintiff aggrieved at being arrested, and suing his arresting officers for civil damages. Although the bulk of the *Roviaro* opinion makes clear that the Supreme Court was concerned with the impact of confidential informants in criminal proceedings, the Court held that the government's informant privilege must give way when the revelation of the identity and information "is relevant and helpful to the defense of an accused, or is essential to the fair determination of a cause ..." *Supra*, 353 U.S. at 60–61, 77 S.Ct. at 628. The Court finds no reason to assume that the principles outlined in *Roviaro* do not apply to a civil case, and will conduct the same balance between the plaintiff's need and the pub-

---

ment be entered for defendants on all of them. Memorandum and Order of August 31, 1987, Paper No. 38; Magistrate's Report and Recommendation of February 2, 1988, Paper No. 44. In Grandison's Response to the August 31, 1987 Memorandum and Order, Paper No. 40, he states, with respect to the discussion of the $10,000.00 bail bond he needed to post, the only one of the other claims he addressed:

> ... plaintiff's claim is not one of the bail being excessive but one that focuses on the falsity of the affidavit supporting the arrest. Had the plaintiff not been subjected to the

false and illegal arrest as a result of falsely manufactured evidence, he would not have to have posted $10,000.00 in order to gain his liberty until trial.

Paper No. 40 at p. 15.

Further, in his late-filed objections, Paper No. 46, to the Magistrate's Report and Recommendation, Grandison raises no objections to the Magistrate's Recommendation on entry of summary judgment for defendants on these claims. It is clear that plaintiff did not intend these as separate causes of action.

lic's interest in protecting the flow of information.

## In Camera Hearings

■ The use of *in camera* testimony to determine how the *Roviaro* balance should be struck has been specifically approved in this and other circuits.[5] Plaintiff has drawn the attention of the Court to two cases in which the defendant has alleged that the preparer of a search warrant affidavit lied, and moved for the exclusion of evidence on that basis. The courts, both in the Ninth Circuit, conducted an *in camera* hearing to determine if defendant had made a "threshold substantial showing of falsity". *United States v. Moore*, 522 F.2d 1068, 1073 (9th Cir.1975) (court properly heard *in camera* testimony from informer and agents, and determined that agent had not lied in affidavit); *accord United States v. Kiser*, 716 F.2d 1268, 1273 (9th Cir.1983) (court properly heard *in camera* testimony from agent to determine that agent had not lied in affidavit). Although the situation which these courts addressed is a different one than faced by this Court,[6] the Court finds that the requirement of a threshold showing, to be made at an *in camera* hearing, to be an appropriate one in a civil case also. Were a plaintiff not required to make such a showing then all any criminal defendant need do to discover the identity of a confidential informant is file a civil lawsuit alleging that the informant did not exist. The *in camera* hearing protects the government from "any significant, unnec-essary impairment of necessary secrecy," while permitting a court to seriously consider the validity of a claim of "what could be serious police misconduct." *Moore, supra,* 522 F.2d at 1073. Accordingly, the Court sees no error in the Magistrate's determination to hold an *in camera* hearing. The Court further sees no error in the Magistrate's taking testimony from Sgt. Childs. The issue is not the veracity of the informant, but the informant's existence. *Kiser, supra,* 716 F.2d at 1273 n. 4. The presence of the informant was not necessary to determine if the informant was real.[7]

■ The Court's review of the tape of this hearing convinces this Court also that Grandison has not made a substantial showing of falsity, or even a minimal showing. *Franks v. Delaware,* 438 U.S. 154, 155–6, 98 S.Ct. 2674, 2676–7, 57 L.Ed.2d 667 (1978); *Moore, supra,* 522 F.2d at 1073. The facts are against him. For a non-existent informant, this individual proved to have rather accurate predictive power, in terms of the safety of Joseph. Further, Grandison provides no evidence to support his conclusory and incredible allegations. Without more, plaintiff cannot persuade this Court that Magistrate Klein reached an incorrect result.

Plaintiff requests, throughout his various memoranda, that the government prove to his satisfaction that this informant exists by providing him with the identity of the informant. He also makes a number of

---

**5.** The issue has arisen most frequently when a criminal defendant alleges that an informant's testimony is critical to his or her defense. Courts have conducted *in camera* hearings with the informant to determine how the *Roviaro* balance should be struck. *See, e.g. McLawhorn v. North Carolina,* 484 F.2d 1, 5 n. 13 (4th Cir.1973); *Gaines, supra,* 662 F.2d at 1369; *Long, supra,* 533 F.2d at 508; *Anderson, supra,* 509 F.2d at 728.

**6.** In both the *Moore* and *Kiser* cases, the courts were addressing the issue of whether evidence should be excluded because of the lack of veracity in a search warrant affidavit. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). The *Franks* case held that "where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks, supra,* 438 U.S. at 155–6, 98 S.Ct. at 2676. If the defendant proves at the hearing the dishonest statement and its materiality, evidence seized pursuant to the statement must be suppressed. *Franks, supra,* 438 U.S. at 156, 98 S.Ct. at 2676.

**7.** The Court notes that in other situations *in camera* testimony from the informant or the agent who prepared the affidavit might be essential. In this case, where plaintiff makes only the bald allegation that the informant was non-existent, the testimony from Sergeant Childs sufficed to provide Magistrate Klein with the information needed to make a determination.

**1248**

alternative suggestions, such as permitting him to cross-examine the informant while permitting the informant to wear a bag or a mask over the informant's head. However, it is not plaintiff that needs to be convinced of the existence of the confidential informant, but rather this Court. This Court is so convinced.