**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bertha Rubio ESPARZA,
Defendant-Appellant.**

**No. 75–3435.**

United States Court of Appeals,
Ninth Circuit.

Dec. 16, 1976.

Robert W. Ripley, Jr. (argued), San Diego, Cal., for defendant-appellant.

Terry J. Knoepp, U. S. Atty., Peter K. Nunez, Asst. U.S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before SNEED and KENNEDY, Circuit Judges, and LUCAS,* District Judge.

SNEED, Circuit Judge:

Bertha Rubio Esparza appeals her conviction for conspiracy to illegally import a controlled substance in violation of 21 U.S.C. §§ 952, 960 and 963 and for conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. § 846. She challenges both the sufficiency of the affidavit underlying her arrest warrant and the sufficiency of the evidence to support her conviction. With respect to the sufficiency of the affidavit, we agree with appellant. This makes it unnecessary to consider her second contention because it is clear that without the evidence obtained incident to appellant's arrest the conviction is not supported by sufficient evidence.

I. *Facts.*

Drug Enforcement Administration (DEA) agents Cesar R. Palma, John Phelps and John Raftery were engaged in an investigation of a suspected narcotics smuggling ring in Tijuana, Mexico. The investigation centered on a residence located at 420 Avenida Granados. During their surveillance, they saw appellant's car parked at the house, and consequently began tracking her movements.

By following the activities of other members of the ring, the DEA determined that the suspects stored their narcotics in a house located somewhere on Calle Los Arboles, but the exact address was unknown. On April 15, 1975, Agent Raftery observed appellant leave her house and drive to 120 Calle Los Arboles. She emerged five minutes later carrying a small cake box, and returned to her home.

Suspecting that she had picked up some contraband, Agent Raftery contacted the Mexican police. As he awaited their arrival, he saw two individuals drive up to and enter appellant's house; all three departed in separate cars before the Mexican police arrived. Several hours later, Agent Palma spotted her car at her brother-in-law's house in the United States.

On April 18, 1975, Mexican police and DEA agents seized at 120 Calle Los Arboles 16 kilograms of heroin, 1 kilogram of cocaine, 200,000 "mini-bennies," and 2 booklets containing lists of drug transactions, one page of which was headed "Bertha." The booklets did not mention any place of delivery. That same day Mexican police searched appellant's home but they found no narcotics.

On the basis of these facts, Agent Phelps executed the following affidavit on May 2, 1975:

The undersigned complainant being duly sworn states:

That on or about April 18, 1975, at San Diego, California in the Southern District of California, BERTHA RUBIO ESPARZA did knowingly and intentionally combine, conspire with oterhs (sic) known and

---

* Honorable Malcolm M. Lucas, United States District Judge for the Central District of California, sitting by designation.

unknown, and with divers other persons unknown to knowingly and intentionally import, and attempt to import, multi-kilos of heroin and cocaine, in violation of Titl3 [Title] 21, United States Code, Sections 952, 960, and 963.

And the complainant states that this complaint is based on information that Special Agent Johnny F. Phelps, Drug Enforcement Administration, by personal investigation and direct observation has placed BERTHA RUVIO (sic) ESPARZA at a residence located at Tijuana, Mexico, wherein a seizure approximating 32 pounds of heroin was made by Mexican authorities on or about April 18, 1975, that BERTHA RUBIO ESPARZA has been personally observed at this residence on numerous occasions and later thereafter seen departing said residence with a parcel and later seen crossing into the United States at the Port of Entry, San Ysidro, California.

In addition to the seizure of heroin at the residence of Soledad Beltran, records documenting the participation of BERTHA RUBIO ESPARZA as a courier of heroin and cocaine were found indicating that during the months of February, March, and April, 1975, BERTHA RUBIO ESPARZA received multi-kilo amounts of heroin and cocaine from Soledad Beltran and others with the express purpose that the heroin be delivered into the United States to persons known and unknown to the undersigned in furtherance of the conspiracy.

S/Johnny F. Phelps

JOHNNY F. PHELPS,

Complainant,

S/A, Drug Enforcement

Administration

An arrest warrant was issued, and on the following day DEA agents arrested appellant at her brother's house in the United States. At the time of her arrest, she was carrying $1,000 in cash and a piece of paper which listed a series of narcotics transactions nearly identical to those found in the booklet at 120 Calle Los Arboles. She also admitted that she had delivered narcotics on the "Street of Los Angeles." The trial court overruled her motion to suppress this evidence and admission.

## II.  Sufficiency of the Affidavit.

Appellant contends that the affidavit of Agent Phelps contained several inaccuracies which serve to invalidate the arrest warrant. She does not argue that these misstatements were the result of any bad faith on the part of Phelps. Nevertheless, we must scrutinize the effect of these errors to determine whether they were sufficiently misleading to vitiate the warrant.

■ An arrest pursuant to an arrest warrant unquestionably is preferable to a warrantless arrest, cf. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), and a marginal case shall be decided in favor of the warrant. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). Moreover, we must test and interpret affidavits which underlie an arrest warrant in a "commonsense and realistic fashion." Id. at 108, 85 S.Ct. 741.

Nevertheless, an affidavit must present to the magistrate sufficient facts to allow him independently to determine whether probable cause to arrest exists. The protection of the Fourth Amendment lies in requiring that this inquiry be made "by a neutral and detached magistrate instead of . . . by the officer engaged in the often competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948). Thus, the affidavit must inform the magistrate of all the essential facts with sufficient clarity to enable him to exercise his independent judgment. United States v. Anderson, 453 F.2d 174 (9th Cir. 1971). Half-truths and misrepresentations as well as conclusory allegations can reduce the function of a magistrate to that of a rubber stamp upon the law enforcement officer's personal determination of probable cause. Cf. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United

*States,* 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ Appellant points out four distinct misrepresentations in Agent Phelps' affidavit. The Government agrees that the statements were erroneous, but insists that they were immaterial to the finding of probable cause. We disagree. To support our conclusion we shall examine each misrepresentation.

While Agent Phelps never "personally observed" appellant at 120 Calle Los Arboles, Agent Raftery, an equally credible source, did see appellant there. This inaccuracy is not substantial although it cast the affidavit in a false light in that it would lead the magistrate to believe that the affiant swore from personal knowledge.

Second, appellant was seen at 120 Calle Los Arboles only once, not "on numerous occasions" as stated in the affidavit. Although numerous visits to a narcotics warehouse is not a prerequisite to involvement in a narcotics ring, this misstatement implies that she was more intimately involved than the facts now known to us would suggest she was.

Third, the affidavit erroneously stated that appellant was "seen departing said residence [120 Calle Los Arboles] with a parcel and later seen crossing into the United States." This naturally implies that she carried narcotics from 120 Calle Los Arboles into the United States, whereas no such implication arises from the activity which Agent Raftery observed.

Fourth, Agent Phelps' affidavit asserted that documents were seized at the Soledad Beltran residence which indicated that appellant received narcotics "with the express purpose that the heroin be delivered into the United States." Nothing taken from 120 Calle Los Arboles even vaguely mentions any intent to distribute narcotics in the United States. The third and fourth misrepresentations, had they been true, undoubtedly would provide the basis for a reasonable belief that a conspiracy to smuggle narcotics into the United States existed. Once these statements are excluded, however, the affidavit lacks facts which adequately point toward the existence of such a conspiracy.

Although each misrepresentation taken alone would not have been fatal to the warrant, the cumulative effect of the inaccuracies was substantial. Purged of these inaccuracies, the affidavit would not support a finding by the magistrate of probable cause. The misrepresentations made it impossible for the neutral magistrate to exercise his independent judgment. His role in the process by which Fourth Amendment rights are protected should not be subverted in this manner. This is precisely the danger that the Supreme Court in *Aguilar* and *Spinelli* sought to avoid. A letter-perfect affidavit is not essential. We cannot, however, sustain a warrant based on an affidavit as inaccurate as Agent Phelps' "without diluting important safeguards that assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry." *Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 591.

Consequently, the judgment of the trial court is reversed.

REVERSED.