**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry Dean KISER, Defendant-Appellant.**

No. 82–1487.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 18, 1983.

Decided Sept. 26, 1983.

Phillip Cronin, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Stevan Noxon, Asst. Fed. Public Defender, Fresno, Cal., for defendant-appellant.

Before FAIRCHILD [*], HUG, and FARRIS, Circuit Judges.

HUG, Circuit Judge:

This case presents a question expressly reserved by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 170, 98 S.Ct. 2674, 2683, 57 L.Ed.2d 667 (1978): Under what circumstances is a defendant entitled to disclosure of the identity of a confidential informant in order to challenge the veracity of a search warrant affidavit?

## I

In November 1981, a United States Magistrate issued a warrant permitting agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") to search Larry Dean Kiser's residence in Keyes, California. The warrant authorized seizure of "a .380 caliber, blue steel semi-automatic pistol and evidence of receipt of said firearm." In his affidavit in support of the warrant, ATF agent Jerry Miller stated he believed Kiser had possession of the described weapon at his home in violation of 18 U.S.C.App. § 1202(a)(1). This was based on information from an informant who had been in Kiser's residence "within the past 10 days" and had "observed a .380 caliber, blue steel semi-automatic pistol." The informant had seen the same gun in Kiser's residence "on several occasions during the past two years." Miller said he had shown the informant a photocopy of a driver's license issued to Kiser; the informant identified the person pictured on the license as the owner of the pistol.

Miller's affidavit also provided information from two local police officers. One, later identified as Officer Plants, advised Miller he had taken the informant to Kiser's residence, which the informant identified as the place he had seen the pistol during the last two years. Officer Callandrillo advised Miller that he had contacted Kiser at the residence "within the past few months."

ATF agents executed the warrant and seized methamphetamines, marijuana, drug paraphernalia, and numerous firearms. Kiser was arrested and later indicted for violations of 21 U.S.C. § 841(a)(1) (possession of controlled substance with intent to distribute) and 18 U.S.C.App. § 1202(a)(1) (possession of firearms by felon).

Kiser sought suppression of all items seized during the search of the residence, challenging both the sufficiency and the veracity of the Miller affidavit. Kiser contended that he had reason to believe that

[*] The Honorable Thomas E. Fairchild, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

Miller's informant was Gene Dwayne Ericson. He asked the court to confirm this belief by inquiring of Miller *in camera* as to the informant's identity. If it were revealed that Ericson was the informant, Kiser would request a *Franks* hearing. He contended that at such a hearing Ericson would provide testimony inconsistent with that attributed to him in the Miller affidavit and would cast serious doubt on the veracity of the affidavit. To support his motion, Kiser filed a lengthy affidavit from Ericson. He also sought to subpoena Ericson and to serve subpoenas duces tecum on officers Miller and Plants, under which they would be required to provide all records and documents relating to the confidential informant.

The district court quashed the subpoenas duces tecum and denied the request for disclosure, concluding that the defendant was only entitled to disclosure where the informant was a percipient witness. The court also refused to conduct an *in camera* hearing on the informant's identity. It determined such a hearing would be a way for Kiser to gain information to which he was not entitled. In addition, it found that Ericson's affidavit was so different from the Miller affidavit that it did not permit the conclusion that Ericson was Miller's informant.

After a jury trial, Kiser was acquitted of the charges in the indictment but convicted on two counts of the lesser included offense of possession of controlled substances. He was sentenced to two consecutive one-year terms.[1]

## II

In *Franks,* the Supreme Court held that the fourth amendment entitled a defendant to challenge the veracity of a search warrant affidavit, and that proof of material perjury or reckless disregard for the truth required exclusion of evidence seized under the warrant. 438 U.S. at 155–56, 98 S.Ct. at 2676–77. The Court concluded that a

ban on impeachment of the veracity of a warrant affidavit would "denude the probable-cause requirement of all real meaning." *Id.* at 168, 98 S.Ct. at 2682. As indicated by the Court, post-execution review of the warrant is justified because warrants are issued at an *ex parte* hearing and often in haste, depriving the magistrate of the opportunity to fully consider the affiant's veracity, and trial court review is the only efficacious sanction to prevent the challenged police misconduct. *Id.* at 169–70, 98 S.Ct. at 2683–84.

We must reconcile the right announced in *Franks* with the "informer's privilege" recognized in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). In *Roviaro,* the Supreme Court acknowledged the public interest in protecting the identity of confidential informants in order to encourage the flow of information necessary in criminal prosecutions. *Id.* 353 U.S. at 59, 77 S.Ct. at 627. The Court expressly limited the scope of this privilege; the interest in anonymity must yield when disclosure "is essential to the fair determination of a cause." *Id.* at 61, 77 S.Ct. at 628; *see United States v. Whitney,* 633 F.2d 902, 911 (9th Cir.1980), *cert. denied,* 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). To determine when disclosure was essential, trial courts were instructed to balance the public interest against the defendant's right to prepare a defense. *Roviaro,* 353 U.S. at 62, 77 S.Ct. at 628.

The informer in *Roviaro* was a percipient witness to the crime and was essential to the development of Roviaro's defense. The Government contends, and the district court implicitly concluded, that the principles supporting *Roviaro* have no application where the defendant seeks disclosure of the identity of an informant who was not a percipient witness. It argues that the defendant's interest in a "mere tipster" whose knowledge does not bear on the defendant's

---

1. The suppression hearing was held before Judge Crocker; the presiding judge at the jury trial was Judge Coyle.

guilt or innocence is outweighed by the public interest in promoting the flow of confidential information. It emphasizes that "the interests at stake in a suppression hearing are of lesser magnitude than those in the criminal trial itself." *United States v. Raddatz,* 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980).

It is clear, however, that these factors do not preclude disclosure when the informant's identity is relevant only to the probable cause determination. *United States v. Anderson,* 509 F.2d 724, 729 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975). In *McCray v. Illinois,* the Court held that the due process clause does not require a fixed rule mandating disclosure at a pretrial hearing. 386 U.S. at 311–13. However, *McCray* did not hold that the informer's privilege was absolute. It implicitly endorsed disclosure where alternate means of assuring the existence of probable cause are not available. *Franks,* 438 U.S. at 170, 98 S.Ct. at 2683; *Anderson,* 509 F.2d at 729.

We conclude, therefore, that the limited right of disclosure announced in *Roviaro* and *McCray* is consistent with the challenge to the warrant affidavit permitted under *Franks.* We hold that a defendant who claims the affidavit misrepresents or invents information supplied by a confidential informant is, in some instances, entitled to a *Franks* hearing. We further hold, however, that the public interest protected in *Roviaro* and *McCray* imposes unique procedural requirements and evidentiary burdens on the defendant who advances such a claim. As stated in *Franks,* there is a presumption that the officer who relies on an informant reports valid information and relies on his source in good faith. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684.

■ To show entitlement to a *Franks* hearing, the defendant must make specific allegations that indicate the portions of the warrant claimed to be false. *Id.; see West Point-Pepperell, Inc. v. Donovan,* 689 F.2d 950, 959–60 (11th Cir.1982). There must be a contention of deliberate falsehood or reckless disregard for the truth. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *see United States v. Davis,* 617 F.2d 677, 694 (D.C.Cir. 1979). The allegations must be accompanied by a detailed offer of proof, preferably in the form of affidavits. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *United States v. Chesher,* 678 F.2d 1353, 1360 (9th Cir.1982); *United States v. Young Buffalo,* 591 F.2d 506, 509 (9th Cir.), *cert. denied,* 441 U.S. 950, 99 S.Ct. 2178, 60 L.Ed.2d 1055 (1979). The offer of proof must challenge the veracity of the affiant, not that of his informant. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *see In re Search Warrant Dated July 4, 1977,* 667 F.2d 117, 137 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981). Finally, the challenged statements in the affidavit must be necessary to a finding of probable cause. *United States v. Flores,* 679 F.2d 173, 176 (9th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 791, 74 L.Ed.2d 996 (1983); *Chesher,* 678 F.2d at 1360.

■ A defendant in Kiser's situation has a difficult evidentiary problem. To make a substantial preliminary showing, he must establish a negative—that the informant does not exist—or uncover the informant's probable identity and the text of his information, despite considerable Government efforts to protect both. *See* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 4.4(d) (1978). Kiser's offer of proof was sufficient to satisfy that burden. Its primary element was the nine-page Ericson affidavit. Because of factual similarities between the Ericson and Miller affidavits, this provided preliminary evidence that Ericson was Miller's informant.[2]

---

**2.** Agent Miller's affidavit stated in part:
That I have received information from a confidential and reliable informant (CRI) that the CRI was in the residence of Larry Dean Kiser at 5562 8th Street, Keyes, California, and observed a .380 caliber, blue steel semi-automatic pistol, located therein within the past 10 days, that being between the dates 10/31/81 and 11/9/81.

We disagree with the district court's conclusion that the two affidavits were too different to permit this inference.

Other sections of the Ericson affidavit contain information materially different from that attributed to the informant by Miller. For example, Ericson stated he told Officer Plants that Kiser had moved out of state two years previously, and that Ericson had not seen him since that time. He stated that he told Officer Plants that he did not know who owned the house or the vehicle parked there. He also stated that he denied knowing Miller, and said he had neither been shown nor identified a driver's license issued to Kiser.

The Government argues that Ericson's affidavit was insufficient as a preliminary showing; it relies on our decision in *United States v. Kim*, 577 F.2d 473 (9th Cir.1978). *Kim* is inapposite for two reasons. First, the *Kim* affidavits challenged the informants' veracity, but not that of the warrant affiant. *Id.* at 479. This would not be an adequate preliminary showing under *Franks*.[3] Second, the *Kim* defendants relied entirely on the informants' affidavits. *Id.* at 478 n. 5. In contrast, Kiser's offer of

> That the CRI told me that she/he has been to Larry Kiser's residence on 8th Street in Keyes on several occasions during the past two years and has seen the .380 caliber pistol on many of those occasions.
> That I have shown the CRI a photo copy of California Driver's License K495246 issued to Larry Kiser DOB 6/30/45 and that the CRI identified the person as the same person who possesses the .380 caliber, blue steel, semi-automatic pistol, at his residence at 5562 8th Street, Keyes, California.
> . . . .
> That on November 10, 1981, I was advised by a full-time California Peace Officer, that he took the CRI to Larry Dean Kiser's residence and that the CRI identified the residence at 5562 8th Street in Keyes, California as the residence of Larry Dean Kiser, where she/he has visited Kiser on several occasions during the past two years, and has seen the .380 caliber, blue steel semi-automatic pistol several times and once within the last ten days. That I have received information from Detective Alex Calandrillo, Stanislaus County Sheriffs Office, Modesto, California, that he is familiar with Larry Dean Kiser and has personally contacted him at his residence for investigative purposes within the past few months, and to the best of his knowledge Larry Dean Kiser still resides at 5562 8th Street, Keyes, California, where Calandrillo previously contacted him.
>
> Gene Dwayne Ericson's affidavit stated in part:
> I first met Ron Plants on July 31, 1981. Ron Plants is known to me as a Stanislaus County Sheriff's Department Deputy assigned to the Narcotics Enforcement Unit. . . .
> After my arrest in July, 1981 Ron Plants began harrassing me to pressure me into "giving up" (informing against) other people. Ron Plants wanted me to give him information about people manufacturing methamphetamine.
> . . . .
> One day Ron Plants came to my house in a tan automobile with three other men who I believe were Federal Alcohol, Tobacco and Firearms (ATF) agents. Ron Plants gave me no choice but to accompany him and the other men; I believe that if I had refused to go that Ron Plants would have arrested me and forced me to go with them. One of the other men drove, Ron Plants was in the back seat with me and another officer sat so that I was between the two officers.
> The officers drove me down the alley behind 5562 Eighth Street, Keyes, Stanislaus County, California and asked me if that was Larry Kiser's house. I told them that I hadn't seen Larry Kiser for approximately two years and that Larry Kiser had moved out of state. The officers asked me whether a white van parked behind the house at that location belonged to Larry Kiser and I told them that the van did not belong to Larry so far as I knew. The officers asked me if the house belonged to Larry Kiser and I told them that Larry Kiser used to stay at that house but that I hadn't seen Larry Kiser for approximately two years. I told them that I did not know who owned the house.
> The officers asked me if there were any guns in the house and I told them that I had seen an automatic pistol on a table in the house which I thought was a .380 caliber. I did not know who owned this pistol and the officers did not ask me. I told the officers that everybody I know owns a pistol.
> . . . .
> To my knowledge Ron Plants or any other law enforcement officer never showed a driver's license photograph of Larry Kiser to identify . . . .
> I do not know who Jerry Miller is except that he might have been one of the names of the federal law enforcement officers with Ron Plants.

3. We note that *Kim* predated *Franks,* and thus did not consider the relationship of *Franks, Roviaro,* and *McCray.*

proof included evidence in addition to Ericson's affidavit. He offered the testimony of Frances Ericson and of Philip Oliver, a Federal Public Defenders Office investigator, as to the conditions under which the affidavit was taken and what was said. The record at the time of the *Franks* motion also included the testimony of Officers Callandrillo and Plants, both of whom Miller quoted in his affidavit. Miller stated that Callandrillo had "personally contacted [Kiser] at his residence for investigative purposes within the past few months." Callandrillo testified he told Miller he had not seen Kiser since the spring of 1980, which would have been about eighteen months before the date of the warrant, and that he did not enter Kiser's property at that time, but that as far as Callandrillo knew, Kiser still lived at the residence. When Officer Plants testified, Kiser's attorney attempted to verify Miller's account of the trip Plants and the informant made to Kiser's residence. The court precluded this line of questioning as likely to expose the informant's identity.

This offer of proof constituted a substantial preliminary showing that Ericson was the informant and that the Miller affidavit misstated important facts. We do not conclude, however, that this showing automatically entitled Kiser to disclosure of the informant's identity. Instead, we suggest the district court adopt procedures to protect the public interest, the informant, and the defendant.

The first step in this case should be an *ex parte, in camera* hearing to determine whether Ericson was, in fact, Miller's informant. Kiser concedes that if the court is satisfied that Ericson was not the informant, that ends the inquiry.

If Kiser has correctly identified the informant, the *ex parte, in camera* hearing must be extended. Its purpose should be to determine if Kiser is entitled to an open evidentiary hearing on his *Franks* claim. We have frequently authorized *in camera* hearings in sensitive situations similar to this. *See United States v. Licavoli,* 604 F.2d 613, 621 (9th Cir.1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980); *United States v. Moore,* 522 F.2d 1068, 1072 (9th Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637 (1976); *United States v. Tutwiler,* 505 F.2d 758, 760 (9th Cir.1974); *Durham v. United States,* 403 F.2d 190, 196 (9th Cir.1968), *vacated on other grounds,* 401 U.S. 481, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971); *see also* 1 W. LaFave *Search and Seizure: A Treatise on the Fourth Amendment* § 3.3(g) (1978). "The *in camera* procedure provides an equally-acceptable accommodation of the competing interests of the Government and the accused in the situation presented here, wherein the question is whether a law enforcement officer has lied. Through disclosure of the informer's identity to the trial judge, and such subsequent inquiries by the judge as may be necessary, the Government can be protected from any significant, unnecessary impairment of necessary secrecy, yet the defendant can be saved from what could be serious police misconduct." *Moore,* 522 F.2d at 1072–73.

At the *in camera* hearing, the trial judge should question Miller, the local police officers quoted in the Miller affidavit, and any other individuals he deems necessary to the determination.[4] We emphasize that the *in camera* inquiry is not a substitute for an evidentiary hearing. Its purpose is merely to determine if Kiser has made a "threshold substantial showing of falsehood." *Id.* at 1073.

If the trial court finds that such a showing has been made, Kiser is entitled to a *Franks* hearing.[5] It will then be his burden

---

4. We reject the Government's contention that an adequate inquiry is not possible because of Ericson's death. The issue is not Ericson's veracity, but Miller's. *See Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. A preliminary determination on the Miller affidavit can be made by questioning the officers.

5. The Government suggests that Kiser's opportunity to question Miller at the suppression hearing was a satisfactory substitute for a *Franks* hearing. We disagree. Kiser's attorney questioned Miller after the district court had denied Kiser's motions for a *Franks* hearing and for disclosure, and those rulings neces-

to establish by a preponderance of the evidence his allegation that Miller's affidavit was untrue. *Franks,* 438 U.S. at 156, 98 S.Ct. at 2676. The Government's contentions that the Ericson affidavit was coerced or is otherwise incredible may be fully explored at that hearing. Because the district court made no findings on these charges, we express no opinion as to their merit.

■ Kiser also alleges that Miller intentionally or recklessly omitted from his affidavit several material items of information. The effect of misrepresentations and omissions on the existence of probable cause is to be considered cumulatively. *United States v. Esparza,* 546 F.2d 841, 844 (9th Cir.1976). Therefore, if a *Franks* hearing is held, the district court should also consider these contentions.

We vacate Kiser's conviction and remand to the district court for an *in camera* hearing and, if necessary, a *Franks* hearing. The *in camera* hearing should be transcribed and its record sealed. In the event the district court finds Kiser is not entitled to a *Franks* hearing, or if such a hearing is held and Kiser does not establish· his claim, the court may reinstate the judgment of conviction. *See United States v. Davis,* 663 F.2d 824, 830–31 (9th Cir.1981).

VACATED and REMANDED.

FARRIS, Circuit Judge, dissenting:

I respectfully dissent. The majority concludes that the limited right of disclosure announced in *Roviaro* and *McCray* is consistent with the challenge to the warrant affidavit permitted under *Franks.* I disagree.

Under *Franks,* Kiser is entitled to a hearing to challenge the validity of the warrant affidavit only upon a substantial preliminary showing that Miller's statements were intentionally or recklessly false. *Franks* left open "the difficult question whether a reviewing court must ever require the revelation of the identity of an informant once

a substantial showing of falsity has been made." *Id.* 438 U.S. at 170, 98 S.Ct. at 2683. Nothing in *Franks* implies that the informant's privilege recognized in *McCray* should give way to allow a defendant to make a preliminary showing that false statements were actually made in the warrant affidavit.

Kiser failed to show that Miller deliberately or recklessly included false statements in his affidavit. Kiser's offer of proof, which consisted primarily of the Ericson affidavit, suggested at most that Ericson intentionally misled Miller or that Miller may have been negligent. It fell far short of showing that Miller deliberately or recklessly misled the magistrate. Without a substantial preliminary showing to this effect, Kiser is not entitled to a full evidentiary hearing. *See Franks,* 438 U.S. at 171, 98 S.Ct. at 2684; *United States v. Chesher,* 678 F.2d 1353, 1360 (9th Cir.1982). "Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause." *United States v. Smith,* 588 F.2d 737, 740 (9th Cir.1978), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1287, 59 L.Ed.2d 498 (1979).

Since Kiser failed to make the required showing under *Franks,* there is no basis here for finding an exception to the *McCray* privilege. This case presents the ordinary tipster situation in which the informant supplied information which led a magistrate to conclude that there was probable cause to issue a search warrant. Nothing in the informant's statements could have been used to convict Kiser. All the evidence of guilt came from the search of the residence. *See id.* 386 U.S. at 311, 87 S.Ct. at 1062; *United States v. Valenzuela,* 596 F.2d 824, 827 (9th Cir.), *cert. denied,* 441 U.S. 965, 99 S.Ct. 2415, 60 L.Ed.2d 1071 (1979); *United States v. King,* 478 F.2d 494, 508 (9th Cir.), *cert. denied,* 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1973), 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974). In addition,

---

sarily circumscribed the line of questioning. The court sustained objections to any questions

concerning the informant.

the information given by the informant and Agent Miller's basis for believing it to be reliable are recounted in the warrant affidavit. Although Kiser's examination of Miller at the suppression hearing was limited to some extent, Kiser had the opportunity to examine Miller concerning the substance of his sworn statements in the affidavit. Specifically, Kiser questioned Miller about the circumstances of his meeting with the informant, the information given by the informant, and Miller's reasons for relying on the information. Kiser also examined Miller about the accuracy of statements made in the warrant affidavit. Despite this opportunity to question the veracity of Miller's sworn statements, Kiser was unable to demonstrate that Miller did not act in good faith. A warrant's veracity can be challenged only through a showing that the affiant acted wrongfully. *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. "It is not enough to show that the *informant* deliberately lied to an unsuspecting affiant." *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir. 1981) (emphasis in original); *see Searing v. Hayes,* 684 F.2d 694, 697 (10th Cir.1982); *United States v. Luschen,* 614 F.2d 1164, 1172 (8th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2161, 64 L.Ed.2d 793 (1980); *United States v. Kim,* 577 F.2d 473, 479 (9th Cir.1978). Finally, Judge Crocker ruled that the usefulness of an *in camera* hearing to Kiser would not outweigh the risk to the informant's life where there was no evidence other than Ericson's statements to indicate that Miller acted improperly. *Cf. United States v. McLaughlin,* 525 F.2d 517, 519 (9th Cir.1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976).

The decision whether to conduct an *in camera* examination should be left to the district judge's discretion. Since 1) the informant's statements were used only to establish probable cause, 2) Kiser was unable to make a preliminary showing that Miller falsely or recklessly ascribed statements in his affidavit to the informant, and 3) the threat to the informant's safety from disclosure of his identity was real, I would hold that it was not an abuse of discretion to deny Kiser's motion for an *in camera* examination.

By *requiring* an *in camera* hearing here, the majority redefines the discretion of the district judge on the question. There are those who would conclude that they have changed the standard. As I understand their ruling, in the future it will be error for a district judge to deny a motion for an *in camera* hearing in certain specified circumstances. Such a rigid rule is unwise. Each case presents different factual situations, and the district judge can best evaluate the specific factors of each case. It is for that reason that the district judge has, in the past, had discretion to decide when an *in camera* hearing is appropriate. In the absence of a showing of abuse, and in my opinion none was shown here, I would affirm.