74 F.3d 1247
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael James HALL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John J. HALL, Defendant-Appellant.
 Nos. 95-10029, 95-10044.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1995.
Decided Jan. 19, 1996.
 
 Before: NORRIS, BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 John J. Hall and Michael J. Hall appeal their convictions upon their conditional guilty pleas to one count of manufacture and possession with intent to distribute marijuana and one count of maintaining a place for the manufacture and use of controlled substances. 21 U.S.C. Secs. 841(a)(1), 856(a)(1). The Halls contend that the district court erred in denying their motion to suppress, following a comprehensive Franks v. Delaware hearing. The Halls argue that a Drug Enforcement Administration ("DEA") agent intentionally made a false statement on a warrant affidavit that was material to the determination of probable cause.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 4
 * The district court's factual findings as to whether a statement in a warrant affidavit is false will be reversed only if clearly erroneous. United States v. Vaandering, 50 F.3d 696, 699 (9th Cir.1995). The party seeking to invalidate the warrant bears the burden "to establish by a preponderance of the evidence his allegation that" a statement in the affidavit is untrue. United States v. Kiser, 716 F.2d 1268, 1273-74 (9th Cir.1983).
 
 II
 
 5
 The Halls argue that the district court clearly erred in finding that Agent Ortega did not make a false statement in the warrant affidavit when he claimed that Agent Bratten had seen a bright light and green marijuana plant through a crack in a crawl space doorway in John Hall's house. The United States concedes that this statement was essential to a finding of probable cause, and thus would be deemed, if false, a material misstatement sufficient to invalidate the warrant and taint the evidence seized in the house. Franks v. Delaware, 438 U.S. 154, 171-72 (1978).
 
 
 6
 Agent Bratten testified at the Franks hearing that he looked through a crack in the frame of the crawl space doorway and saw a "bright light being emitted [and] a green plant." Agent Ortega indicated that he looked through the crack on December 27, the day that the warrant was served, and was able to see "bright lights and [a] green plant in the distance." DEA Agents Bax and Gutensohn also looked through the crack in the door frame on December 27, and they corroborated Bratten's observations. The agents all gave substantially similar descriptions of what they saw.
 
 
 7
 Defense witness Dr. John Thornton testified that he examined 77 DEA photographs taken on December 27, 1991, 14 photographs taken by a defense investigator in early 1992, and a videotape taken by the DEA of the crawl space doorway on December 27, 1991. In March 1994, Thornton visited the scene. Based on his observations, Thornton testified that he did not "think it would have been possible" for someone to have looked through a crack in the doorway and to have seen bright lights and a green plant. Thornton found no evidence that the door or frame had been modified during the time between 1991 and 1994 in a manner that would change his opinion.
 
 
 8
 The district court issued its ruling from the bench, and gave a lengthy elaboration of its reasons for denying the motion to suppress. The district court found the DEA agents to be credible witnesses. The district court also found Dr. Thornton to be a credible witness, but the court noted that the agents had seen the door on December 23 and 27, 1991, while Thornton had only examined pictures, a video and the door three years later. The district court ultimately concluded that it was "a standoff," and thus ruled that the Halls had not established falsity by a preponderance of the evidence.
 
 
 9
 The district court's factual findings were not clearly erroneous. The court weighed credible eyewitness testimony against credible expert testimony, and concluded that the Halls had not carried their burden. The court had the opportunity to judge the credibility of the agents. The court observed the agents' demeanor on direct and cross-examination, and nothing in the record demonstrates that its ultimate credibility determination was clearly erroneous. See United States v. Hodges, 770 F.2d 1475, 1478 (9th Cir.1985) (questions of credibility generally immune from appellate review).
 
 
 10
 The Halls argue that once the district court found Dr. Thornton's testimony to be credible and unimpeached, the court should have accorded his conclusions dispositive weight. The district court's finding that Thornton was credible does not obligate the court to agree with every one of his conclusions. The court ultimately found that Thornton did not exclude the possibility of changes to the door.
 
 
 11
 Although Thornton stated that he did not believe a person could see through the crack, he did not examine the door until three years later. He concluded that the door had not been altered based upon his comparison of pictures taken at the time and based upon his inspection of the door. As he frankly admitted, the pictures and video of the door taken in 1991 were "not altogether suitable for making a definitive determination of whether or not there was a crack."
 
 
 12
 Thornton also admitted that the lock on the door had been changed and a latch installed, although the parties agree that this would not have closed the alleged gap at issue. Although Thornton stated that the coloring of the wood indicated that new molding had not been added, he stated that he could not "assess the age of the wood."
 
 
 13
 Because of the time-lag and the possibility of changes in the position of the crawl space door, the district court did not clearly err in crediting the agents' contemporaneous eyewitness testimony at the Franks hearing and denying the motion to suppress. The district court believed both Dr. Thornton and the agents, but the court found that Dr. Thornton had not completely excluded the possibility of changes to the door. The court closely reviewed the pictures, finding that "you cannot finally decisively and definitively conclude that it shows the trim in the form that it is in the model that we have been working with here in court."
 
 
 14
 The district court made a "close call" based upon the testimony and photographs, correctly placing the burden on the defense. The court carefully weighed and sifted the evidence, and we do not find clear error.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3