74 Cal.Rptr.2d 899 (1998)
64 Cal.App.4th 326
The PEOPLE, Plaintiff and Respondent,
v.
Robert Lewis THEILEN, Defendant and Appellant.
No. F026190.
Court of Appeal, Fifth District.
May 29, 1998.
Rehearing Denied June 24, 1998.
Review Denied September 2, 1998.[**]
Scott Concklin, under appointment by the Court of Appeal, Sacramento, for Defendant and Appellant.
Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Carlos A. Martinez and Virna DePaul Meyers, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication[*]

*900 OPINION
BUCKLEY, Associate Justice.
In this opinion, we discuss the discrepancy between our two high courts on a significant constitutional issue and conclude that the California Supreme Court has not employed the safeguards mandated by the United States Supreme Court regarding in camera suppression motions. Nevertheless, as a court of inferior jurisdiction, we are constrained to follow our own Supreme Court's law on the subject and will affirm.[1]

BACKGROUND
On November 16, 1995, Kern County Municipal Court Judge H.A. Staley issued a warrant authorizing the search of defendant's residence and surrounding buildings located at 3009 Peerless Avenue and codefendant Richard Ellis's residence and surrounding buildings located at 100 Patti Avenue. In support of the request for issuance of the warrant, Judge Stalely received two oral affidavits. Bakersfield Police Department Detective Scott Tunnicliffe averred in open court that he had been contacted by a confidential citizen informant (CI) who wished to provide him with information regarding defendant's manufacture of methamphetamine. The CI identified a photograph of defendant as the same person regarding whom the CI was providing information. The CI also provided a "recipe" for the manufacture of methamphetamine which was taken from one of the places listed in the warrant. Detective Tunnicliffe presented the recipe to a supervising criminality with the Kern County District Attorney's laboratory. It was the criminalist's opinion that the document described the P-2-P method of methamphetamine manufacture. Defendant had previously been convicted of unlawfully possessing and driving under the influence of a controlled substance. Defendant's arrest record and his driver's license listed 3009 Peerless as his home address. A vehicle registered to defendant was seen by Detective Tunnicliffe parked in front of this address.
The court adjourned and reconvened in camera. During this proceeding the CI testified. At the conclusion of the CI's testimony the court asked the CI whether he/she was concerned that if defendant learned who had provided information regarding his drug manufacture "that you will be in jeopardy at all?" The CI replied, "If he is aware, if he's aware that I am, yes, he may, he may take actions towards me." In response to the court's question whether this concern was "serious," the CI replied, "Yes, I guess I would have, if he was to know."
Detective Tunnicliffe testified that on at least one prior occasion the CI had provided information to the police department which led to the arrest of at least one person and the seizure of narcotics.
The prosecutor asked for the proceeding to be sealed. The court agreed and also sealed the recipe. These documents (hereafter referred to collectively as the affidavit) have not been reviewed by defendant, his trial or appellate attorneys, or the People.
On November 17, 1995, defendant's residence and that of Ellis were searched pursuant to the warrant. Approximately one pound of methamphetamine, one pound of marijuana, packaging material, cutting agent, $1,250 in cash, numerous firearms, ammunition, smoke and chemical grenades were found inside defendant's residence and garage. A list of chemical names was found in defendant's wallet. Search of Ellis's property resulted in the seizure of a machine gun with a silencer and ammunition, more methamphetamine, laboratory glassware, equipment manuals, miscellaneous papers containing methamphetamine manufacturing recipes, numerous chemicals used in the manufacture of methamphetamine, a chemistry book, a digital pager, and a cellular telephone account statement.
It was subsequently determined that defendant's fingerprints were on 15 of the documents and on one of the glass beakers seized from Ellis's property.
*901 An information was filed charging defendant with eight felony offenses.
On February 29, 1996, Ellis moved to quash and/or traverse the warrant and to disclose the identity of the CI; defendant joined in the motion. On March 15, 1996, defendant moved to unseal the search warrant affidavit. In its opposition to these motions the People asked for in camera review of the affidavit.
On March 22, 1996, Kern County Superior Court Judge Lee Felice performed an in camera review of the affidavit. Detective Tunnicliffe and the prosecutor were present; defense counsel was excluded. Detective Tunnicliffe testified that he and the CI had testified before Municipal Court Judge Staley in support of issuance of the warrant. The court received from Tunnicliffe a copy of exhibit C, which contained a transcript of the CI's testimony, and a copy of exhibit D, the recipe.
The court reconvened in open court. It stated that it had reviewed the sealed transcript and exhibits which were before Judge Staley and had reached the following conclusions: (1) there are sufficient grounds to maintain the confidentiality of the informant's identity at this time; (2) there is no way to sanitize the affidavit without revealing the CI's identity; (3) there is no basis to traverse the warrant; and (4) the warrant is supported by sufficient probable cause. The court also stated that it did not believe the informant was a material witness as to the guilt of either defendant, and there was no reasonable possibility that nondisclosure of the identity of the CI would deprive either defendant of a fair trial.
The March 22, 1996, in camera proceeding was also sealed and has not been reviewed by defendant, his trial or appellate attorneys, or the People.
Defendant subsequently entered into a negotiated plea arrangement whereby he pled guilty to violation of Health and Safety Code sections 11379.6, 11378, 11359, and admitted having violated Penal Code section 12022 in exchange for a sentence not to exceed six years and eight months. On May 1, 1996, defendant was sentenced to a term of six years.

DISCUSSION
I. The Suppression Hearing
Defendant challenges the constitutionality of the March 22 in camera hearing and the legal and factual sufficiency of the trial court's rulings on his motions to unseal the affidavit and to quash/traverse the warrant. As will be explained below, we have concluded that the limited in camera review the California Supreme Court directs trial courts to undertake in People v. Hobbs (1994) 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246 (hereafter Hobbs) may be insufficient to protect an accused's right to confront his accusers through a public trial and to effective representation of counsel. However, under the principles of Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 20 Cal.Rptr. 321, 369 P.2d 937, we are compelled to follow Hobbs. Since we have found that the trial court was correct in its conclusion that the warrant was supported by probable cause and that there was no basis to traverse, we will affirm.[2]
*902 The Sixth Amendment public trial guarantee carries with it a presumption that judicial proceedings will be open to the public. Only with openness will "`the public ... see [that the accused] is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions....'" (In re Oliver (1948) 333 U.S. 257, 270, fn. 25, 68 S.Ct. 499, 506, 92 L.Ed. 682, quoted in Gannett Co. v. DePasquale (1979) 443 U.S. 368, 380, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608.) Infringement of the public trial guarantee is a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (Arizona v. Fulminante (1991) 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302.) .As such, it falls within "the category of constitutional errors which are not subject to harmless error" analysis. (Ibid.) The state public trial right is coextensive with the federal guarantee. (People v. Woodward (1992) 4 Cal.4th 376, 381, 14 Cal. Rptr.2d 434, 841 P.2d 954.)
In Waller v. Georgia (1984) 467 U.S. 39, 47, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (hereafter Waller), the United States Supreme Court declared that the public trial guarantee applies to suppression hearings. As explained in Waller, "suppression hearings often are as important as the trial itself. [Citations.] In ... many cases, the suppression hearing [is] the only trial, because the defendants thereafter plead[] guilty' pursuant to a plea bargain." (Id. at pp. 46-47, 104 S.Ct. at pp. 2215-2216 as quoted in Hobbs, supra, 7 Cal.4th at p. 981, 30 Cal.Rptr.2d 651, 873 P.2d 1246, dis. opn. of Mosk, J.) In Waller, supra, 467 U.S. 39, 104 S.Ct. 2210, the high court authorized the use of in camera proceedings during suppression hearings provided certain safeguards are met. It was held that to support closure of a suppression hearing, a quadripartite test must be passed. "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." (Id. at p. 48, 104 S.Ct. at p. 2216.) As explained in Waller, "'The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (Id. at p. 45, 104 S.Ct. at p. 2214.) The burden is on the party seeking closure to establish the existence of an overriding interest and substantial probability of prejudice. (Ayala v. Speckard (2d Cir.1996) 89 F.3d 91, 95.) It is the existence of specific, particularized facts such as gang involvement, prior history of violence, unindicted coconspirators, prior threats to the informant or others, or an ongoing criminal investigation which justifies the closure of a suppression hearing. (Ibid.)[3]
In Hobbs, our high court confronted the tension "between the People's privilege to refuse disclosure of a confidential informant's identity and the defendant's limited discovery rights in connection with any challenge to the search warrant's validity." (7 Cal.4th at p. 964, 30 Cal.Rptr.2d 651, 873 P.2d 1246.)[4] After extensive discussion of its prior *903 or opinion on the issue (People v. Luttenberger (1990) 50 Cal.3d 1, 265 Cal.Rptr. 690, 784 P.2d 633) and those of the California Courts of Appeal, it determined that "to initiate a subfacial challenge (by moving to traverse the warrant), or otherwise to make an informed determination whether sufficient era probable cause existed for the search (in consideration of a motion to quash the warrant), certain procedures should be followed in order to strike a fair balance between the People's right to assert the informant's privilege and the defendant's discovery rights." (Hobbs, supra, 7 Cal.4th at p. 972, 30 Cal. Rptr.2d 651, 873 P.2d 1246, fn. omitted.) On a properly noticed motion, the lower court should conduct an in camera hearing in which it first determines whether sufficient grounds exist for maintaining the confidentiality of the informant's identity. It then proceeds to determine whether it is necessary to seal the entirety of the affidavit, after which it reviews the legal sufficiency of the search warrant affidavit, considering both whether the warrant is supported by probable cause and whether there exists any basis to traverse the warrant. (Id. at pp. 972-974, 30 Cal. Rptr. 2d 651, 873 P.2d 1246.)
In a compelling dissent, Justice Mosk recognized that the procedure authorized by the majority "raises potential constitutional problems. First, it may violate defendant's right to due process to permit the prosecution both to use evidence seized pursuant to a warrant search and to conceal the facts relied on to establish probable cause.... Second, denying all the information used to establish probable cause may violate defendant's Sixth Amendment rights." (Hobbs, supra, 7 Cal.4th at p. 981, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) Because a suppression hearing is a critical stage in the proceedings, the court "should interpret the informer's privilege not to apply when its assertion conceals from the defendant all the material facts used to establish probable cause." (Ibid.)
Defendant argues that the Hobbs majority opinion required the trial court to first inquire whether there existed sufficient ground to necessitate maintenance of the confidentiality of the CI's identity after service of the warrant and defendant's arrest. We agree that if Hobbs were to be harmonized with the quadripartite test established in Waller such a requirement must be read into the opinion, However, we are forced to conclude that Hobbs did not intend to impose such a requirement. We therefore believe the in camera review procedure established in Hobbs does not comport with Waller and for this reason should be reconsidered,
Although Hobbs states that "It must first be determined whether sufficient grounds exist for maintaining the confidentiality of the informant's identity," we cannot in good conscience interpret this as a reference to the overriding interest prong of the Waller test, (Hobbs, supra, 7 Cal.4th at p. 972, 30 Cal. Rptr.2d 651, 873 P.2d 1246, italics added.) The Hobbs majority makes no reference to Waller. In fact, it does not even reference the public trial guarantee. The focus of the opinion is on striking a balance between the defendant's discovery rights and the informant's privilege. In this statement, the majority is simply referencing the predicates for continuing to assert the informant's privilege embodied in Evidence Code sections 1041 and 1042. In essence, Hobbs appears to accept, without question, the primacy of those sections over the constitutional guarantees of the Sixth Amendment. That the majority did not intend its language requiring a continuing necessity to be interpreted as a requirement that a need for continued secrecy be sown is demonstrated by the fact that Justice Mosk specifically noted in his dissent that "the prosecutions' interest in the confidentiality of this particular informer was fairly low: there was no evidence in the record that this informer had been of past value or would be of continuing value to the police. Further, this case did not involve organized crime or large quantities of valuable drugs, and thus did not involve a great threat of physical harm to the informer. Given the significance of the information sought and the comparatively weak reasons for maintaining the privilege, simple fairness dictates the privilege should give way here." (7 Cal.4th at p. 982, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) Since the Hobbs majority did not even reference the fact that the prosecution had failed to produce any evidence of a continuing interest in protecting the informant's *904 anonymity and safety, it cannot reasonably be inferred that it intended to require such a showing.
The omission of a requirement that the prosecution first show that it has an overriding interest in excluding the accused and his attorney from the suppression hearing opens the door to violation of an accused's constitutional rights to public trial and effective assistance of counsel. We agree wholeheartedly that law enforcement must be able to protect its confidential informants. We also agree that when confidentiality must be maintained, a process of in camera review can provide an acceptable accommodation between the competing interests of the government and the accused. However, Hobbs basically eliminates suppression hearings, as we understand the concept, in every case involving a confidential informant. In camera proceedings give prosecutors a huge advantage in that they alone appear before the judge. While the trial judge is charged to anticipate and assess arguments which could be made on defendant's behalf, resort to such proceedings should properly be rare and subject to "`overriding interest[s].'" (Cf. Waller, supra, 467 U.S. at p. 45, 104 S.Ct. at 2214.) The belief that an individual should be present and represented by counsel at proceedings which decide his fate is fundamental to our jurisprudence. This essential constitutional protection was set in place by our founding fathers to protect individuals against "Star Chamber" proceedings. By failing to require the party seeking to close the courtroom to satisfy the Waller test, the Hobbs majority has increased the peril that California will become a state of secret proceedings and trial by ambush.
The danger that an accused's constitutional protections will be infringed was realized here. It is beyond dispute that the state has an overriding interest in protecting the safety of its informants and in continuing the vitality of ongoing criminal investigations. However, the record here is devoid of any evidence whatsoever which would show that the prosecution had any interest likely to be prejudiced if the affidavit were unsealed. Absolutely no testimony referencing the need for continued confidentiality was offered during the March 22, 1996, in camera proceeding. And neither the CI nor Detective Tunnicliffe offered any specific factual testimony at the November 16, 1995, in camera proceeding which could reasonably support a conclusion that maintenance of secrecy was necessary after execution of the warrant and defendant's arrest. At the November 16, 1995, hearing the CI testified that he/she feared reprisal from defendant were he to learn of the testimony. However, the CI did not provide any factual details on this topic. There was no testimony of any threats or prior incidents of violent or retaliatory conduct by defendant or Ellis. There was no evidence tending to show that defendant and Ellis were part of a larger drug manufacturing and distributing ring. Defendant's prior criminal record does not include any violent offenses or crimes involving the manufacture or distribution of contraband. Detective Tunnicliffe offered no testimony regarding any gang affiliation defendant might have nor did he testify that there were other coconspirators who could harm the CI. There was no evidence that the CI was involved in other ongoing criminal investigations which would be justified were his/her name to be revealed to the defendant.[5] Thus, there was no factual basis supporting the exclusion of defendant from the suppression hearing.
The analysis articulated above is respectfully offered for the consideration of higher judicial bodies. Being a court of inferior jurisdiction, we must reject defendant's argument that in California a showing of a need for continued secrecy must be made prior to excluding defendant from the suppression hearings. Following the dictates of Hobbs, we make the following conclusions: (1) the informant's privilege had not been breached prior to the March 22 in camera hearing; the predicates to the privilege were met; (2) the sealing of the entire affidavit was necessary to avoid revealing the informant's identity. The trial court's findings that the warrant was supported by probable cause and there were no material omissions *905 or misrepresentations are also correct. Review of the sealed testimony given to the magistrate at the November 16, 1995, proceeding clearly supports the trial court's probable cause finding. There is also no basis to conclude that the detective omitted any material information affecting the CI's credibility or that the CI made any false statements which the prosecutor knowingly failed to correct. At the March 22, 1996, hearing Detective Tunnicliffe did explain the CI's motivation for coming forward to him with information about the lab. This additional information supplemented testimony given during the November 16, 1995, in camera proceeding. We concur with the trial court's conclusion that the omission of this information at the earlier proceeding was not material. We have also determined that the trial court's inquiry in this area was sufficient. It reviewed the evidence presented at the November 16, 1995, proceeding and took further testimony from Detective Tunnicliffe.
Were we free to follow our legal conscience, we would reverse the judgment and remand the matter for consideration whether there existed factual predicates to satisfy the Waller test.[6] If the People could not make the required showing, then defendant's Sixth Amendment rights must take primacy over the informant's privilege. Yet, as previously noted, we are not at liberty to disregard the dictates of the California Supreme Court Therefore, despite deep misgivings concerning the constitutionality of Hobbs, we will affirm.
II.[***]

DISPOSITION
The judgment is affirmed.
VARTABEDIAN, Acting Presiding Justice, concurring.
I concur that the judgment should be affirmed. In my view, the California Supreme Court majority in People v. Hobbs (1994) 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246 implicitly determined that the procedures outlined in Hobbs did not offend one's public trial guarantee described in Waller v. Georgia (1984) 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31.
*906 WISEMAN, Associate Justice, concurring.
I concur in the result only. In my opinion, the trial court made the appropriate inquiries and findings pursuant to People v. Hobbs (1994) 7 Cal.4th 948, 30 Cal.Rptr.2d 651, 873 P.2d 1246. Review of the sealed record supports the trial court's findings and conclusions. Therefore, there was no error and the appropriate disposition is to affirm the judgment.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.
[**] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] It is recognized that this is a plurality opinion; the use of the pronoun "we" is therefore used herein as a term of art rather than substance.
[2] It is incumbent upon us to point out at the outset why defendant's challenge to the court's denial of his motion to unseal the affidavit is cognizable on appeal even though his conviction resulted from entry of a guilty plea. In Hobbs, the high court pointed out that Penal Code section 1538.5, subdivision (m) permits a defendant to seek appellate review of the validity of a search or seizure after a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty or no contest. "Accordingly, if defendant's challenge to the sealing of the affidavit was directed to the legality of the search, it is cognizable on appeal pursuant to that statutory exception." (Hobbs, supra, 7 Cal.4th at p. 956, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) However, Hobbs also made it clear that entry of a guilty plea bars appeal of the denial of a motion to unseal an affidavit which was made solely for the purpose of obtaining evidence relating to defendant's guilt. (Id. at p. 957, fn. 1, 30 Cal.Rptr.2d 651, 873 P.2d 1246.) By pleading guilty defendant waived any claims relating to the necessity of learning the informant's identity in order to prove his innocence. (Ibid.) Therefore, due process protections guaranteeing defendant information material to his defense and a full and fair opportunity to defend himself are not under consideration. Any argument speculating that perhaps defendant would not have sled guilty had he been privy to the affidavit is not cognizable. We consider only the effect of the trial court's failure to inquire into the need for continued protection of the CI.'s identity as it relates to denial of the suppression motion.
[3] Although defendant correctly points out that Waller did not involve exclusion of the accused from the hearing, United States v. Kiser (9th Cir. 1983) 716 F.2d 1268 (hereafter Kiser) did. There, the Ninth Circuit specifically approved use of an in camera proceeding, held outside the accused's presence, to determine whether the identity of an informant should be disclosed in order to permit the accused to mount a challenge pursuant to Franks v. Delaware (1978) 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667. (Kiser, supra, 716 F.2d. at p. 1273.) We therefore reject defendant's contention that an in camera proceeding is a per se violation of his constitutional protections.
[4] Law enforcement is legally privileged to protect the identity of a person who has furnished information regarding criminal activity. (Evid. Code, §§ 1041, 1042.) "`California does not require disclosure of the identity of an informant who has supplied probable cause for the issuance of a search warrant where disclosure is sought merely to aid in attacking probable cause.'" (People v. Borunda (1974) 11 Cal.3d 523, 527, 113 Cal.Rptr. 825, 522 P.2d 1.)
[5] We acknowledge that weapons were seized from the premises of codefendant. However, mere gun possession is insufficient; gun owners are not per se dangerous.
[6] This would be effected by ordering a limited remand to the superior court for reconsideration of the motion to unseal the affidavit. In so doing, we again follow the lead of Waller, supra, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31.

In Waller, the Supreme Court found that the exclusion of the public from the lengthy suppression hearing Violated defendant's public trial right. It then discussed the appropriate relief at length. The high court rejected the argument that a new trial on the merits was necessary, concluding that grant of a new trial "presumably would be a windfall for the defendant, and not in the public interest." (467 U.S. at p. 50, 104 S.Ct. at p. 2217.) Instead, it ordered the matter remanded for another suppression hearing. The state was directed to only consider conditions at the time of the new hearing in deciding whether to close part, if any, of the hearing. "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the positions of the parties." (Ibid.; see also Kiser, supra, 716 F.2d at p. 1274 [remand ordered].)
In California, the remedy outlined in Waller is known as a limited remand. The propriety of such a disposition is well established. People v. Minor (1980) 104 Cal.App.3d 194, 163 Cal.Rptr. 501 cogently summarizes the salient legal principles:
"In its disposition of a criminal case the appellate court is not limited to the more common options of affirmance, reversal or modification of the judgment or order appealed from. The court `may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances' (Pen. Code, § 1260). Where the record on appeal discloses trial error affecting the fairness and reliability of the guilt determination process, the normal remedy is outright reversal; ... But when the trial is free of prejudicial error and the appeal prevails on a challenge which establishes only the existence of an unresolved question which may or may not vitiate the judgment, appellate courts have, in several instances, directed the trial court to take evidence, resolve the pending question, and take further proceedings giving effect to the determination thus made." (104 Cal.App.3d at p. 199, 163 Cal.Rptr. 501.)
We would therefore conclude that if a reviewing court finds that a trial court has erroneously excluded defendant from a suppression hearing, or if the in camera review is not properly conducted, then the judgment should be reversed and the matter remanded for further hearing in compliance with Hobbs. A defendant is to be afforded an opportunity to withdraw his guilty plea only if a suppression motion is granted on remand.
[***] See footnote *, ante.